MAGINNIS, Appellant, vs. KNICKERBOCKER ICE COMPANY and another, Respondents.

| | |
|---|---|
| 112 | 385 |
| 113 | ²318 |
| 112 | 385 |
| 57 LRA | 463 |

*November 30 — December 17, 1901.*

Deeds: *Condition subsequent: Breach: Re-entry: Remedies: Pleading: Equitable. construction: Forfeiture: Waiver: Railroads: Eminent domain: Private purpose: Possession of land under contract.*

1. If a person conveys land to another stipulating that the title shall revert to him upon a failure of such other to fulfill certain conditions specified, a breach of the condition occurs; and such person makes re-entry of the property or does something equivalent thereto for the purpose of reclaiming the same pursuant to the terms of the grant, in the absence of any equity preventing the legal effect of such facts the title to such property will thereby become revested in such person as absolutely as it was before such conveyance was made.

2. In the circumstances stated, the grantor, having reclaimed the property, may invoke judicial remedies in respect thereto, pleading his

title in general terms the same as if no disturbance thereof had occurred by reason of the grant upon condition.

3. If a person conveys property to another, coupled with a condition the breach of which will, if taken advantage of, cause the title to revert to him, the condition being to secure the payment of money, or the performance of an obligation the breach of which can be fairly measured in money by some established rule, the particular thing to be done or the particular time of the doing thereof not being made essential and of the very essence of the contract, under some circumstances a court of equity, by an arbitrary rule of construction peculiar to that jurisdiction, may say the parties did not intend the full effect of their language, but purposed to have the condition stand as security for the performance of the obligation or the payment of an equivalent in money.

4. By the arbitrary rule referred to, contracts may be judicially made to read contrary to the literal or reasonable meaning of the language thereof, measured by ordinary rules for judicial construction, and then enforced according to the intention of the parties as judicially declared.

5. The rule of construction above indicated applies to prevent a forfeiture where the circumstances are such as to fall within the jurisdiction of equity and the person seeking the benefit thereof is not guilty of having wilfully or inexcusably violated his obligation.

6. The beneficiary of a condition in the conveyance of property, for the breach of which the title thereto may revert to him, may lose the benefit thereof by conduct rendering it inequitable for him to insist upon the forfeiture as stipulated.

7. Mere silence is not sufficient to waive a forfeiture; but silence on one side and conduct in good faith relying thereon on the other, whereby such other is placed in such a situation that he will be greatly damaged if the apparent attitude of his conditional grantor be changed effectively, will bind such grantor as a waiver of the benefit of the condition.

8. Mere silence will not operate as a waiver of the benefit of a condition in case of an intentional breach thereof, though the conditional grantee incur expense which would operate to his prejudice if the grantor were thereafter permitted to insist upon the forfeiture.

9. The establishment of a railroad as a purely private enterprise cannot be legitimately aided by the power of eminent domain.

10. The doctrine, that if a railroad company takes possession of land for a public way, the owner thereof not objecting, the latter will be presumed to have consented thereto and impliedly agreed to accept a just compensation therefor and consented to rely upon the

statutory method of obtaining the same, has no application to a case where the rights of the parties are defined by a written instrument.

11. If a railway corporation takes possession of land for a private purpose, its right to do so resting in a grant by the owner thereof, and it subsequently loses that right by forfeiture to such owner, it cannot thereafter defy such owner and continue to enjoy his property because it might successfully proceed in good faith to acquire it for a public purpose.

CASSODAY, C. J., dissents.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed.*

Action to restrain a continuous nuisance. The complaint states, in substance, that plaintiff was the owner in fee simple and in possession of certain lands described, situated in Racine county, Wisconsin; that defendants constructed a spur railroad track thereon, leading from the main track of the *Chicago, Milwaukee & St. Paul Railway Company* southeasterly of said land, in a northwesterly direction to the boundary line thereof, and intends to enter upon and permanently occupy said premises for said spur track, and to operate railway freight trains over the same, without permission of plaintiff or having first acquired the right to do so. The defendant *Knickerbocker Ice Company* answered, denying the allegations of the complaint as to the title and possession of the premises in dispute, and alleging title and right of possession in itself, and that such possession was exclusive except that the defendant railway company possessed a license to maintain a railway track over the same for the purpose of reaching ice industries operated by said ice company; that the railway track had been maintained and operated continuously for more than three years before the commencement of the action, by said railway company, as a part of its public railway system. The railway company answered substantially the same as the ice company.

On the trial plaintiff admitted that the railway track had been maintained and operated for more than three years before the commencement of the action, but claimed that it was so maintained and operated solely for use of the defendant ice company. The following facts were established by the evidence: December 15, 1893, Frederick Uhen, under whom both plaintiff and defendants claim title, conveyed to Thomas Boyle the thirty-three-foot strip of land across a portion of section 34, town 3, range 19, described in the complaint, out of a tract of land owned by him, for a right of way for a railway track leading from the main track of the Chicago, Milwaukee & St. Paul railway to certain ice houses owned by the grantee and his associates. The conveyance was made upon conditions expressed therein as follows:

"Provided that said second party inclose said premises herein conveyed with a good, legal and sufficient fence and forever maintain the same, and provide a suitable crossing in said strip at a point to be designated by the first parties, and to maintain gates in the fences at such crossing, and to build and maintain suitable culverts at the points where ditches now cross said premises, then this deed shall remain of full force and effect; but if at any time said grantee shall suffer the above conditions to be broken, then said described premises shall revert back to said first parties, their heirs or assigns."

Thereafter Boyle leased to the defendant railway company the center seventeen feet of said strip of land and contracted with such company to construct a spur track thereon for the exclusive use of himself and his associates in the operation of their ice industry. A track was constructed accordingly, Boyle and his associates preparing the roadbed and the railway company furnishing the ties and rails and putting the same in place. While such work was in progress, Uhen made complaint to Boyle and others engaged therein, because no provision was being made for putting in culverts. No attention was paid to his complaints other than to sug-

gest to him that culverts were not necessary. Ditches were made on either side of the strip, and the cross drainage ditches, agreed to be preserved by culverts under the track, were connected with such side ditches so that the water would flow through them off from plaintiff's land. There was delay in putting in the farm crossing, but it was finally put in and accepted. Soon after the construction of the spur track the rights of Boyle in the land, by mesne conveyances, became vested in the defendant ice company. The condition in respect to fencing the land was never performed. Uhen made complaint as to that on several occasions, at one time giving notice that the title conveyed by him could be reclaimed because of neglect to build the fence. During the summer of 1899, upon Uhen complaining about the failure to build the fence, he was promised that the premises should be inclosed after harvest time of that year. He acquiesced in that. In November, thereafter, plaintiff became the owner of the land, by conveyance from Uhen, out of which he conveyed the premises in controversy. Thereafter, with knowledge of and without protest from Uhen, the defendants fenced that part of such premises leased to the railway company. Thereafter, on January 4, 1900, Uhen went upon the strip of land for the purpose of reclaiming title thereto for nonperformance of the conditions of the deed. He then declared in the presence of several persons the purpose of his entry, and constructed fences across the ends of the strip so as to exclude all comers therefrom. He then conveyed the land to plaintiff, who thereafter removed the side fences of the seventeen-foot strip, making the entire thirty-three-foot strip a part of her inclosure. The railroad company did not construct, operate, or intend the spur track for public use, but established it for the exclusive use of the owners of the ice industry served by it.

At the close of the trial the plaintiff's attorneys requested the court to find facts in accordance with the foregoing,

presenting written findings to that effect, which request was refused.   A decision was rendered for defendants, the findings of fact being to the effect that the spur track was constructed and operated for public purposes; that the defendant ice company was the owner and entitled to the possession of the premises in dispute; that the railway track was owned and operated by the *Chicago, Milwaukee & St. Paul Railway Company*, and was on the premises by license of the ice company; that plaintiff was not entitled to any compensation from the defendants for the land or for the use thereof, and had not suffered and would not suffer any injury by reason of any acts of the defendants or either of them.

Judgment was rendered upon such findings in favor of the defendants for costs.

*Louis H. Rohr*, attorney, and *John B. Simmons*, of counsel, for the appellant, argued, among other things, that the action was brought to protect plaintiff's possession after reentry by her grantor and after conveyance and delivery of possession by him to her.   She did not, and never intended to, bring an action in equity to declare and enforce a forfeiture.   Not only is it well settled that a forfeiture cannot be enforced in that form of action; but it is equally well settled that only the grantor can take advantage of a condition subsequent, and that until re-entry he has no interest in the land which he can convey; so that plaintiff's right depends entirely upon the title having revested by act of her grantor, before the conveyance to her.   2 Devlin, Deeds, § 969; Martindale, Conveyancing, § 124; 1 Jones, Real Prop. §§ 708, 723, 728; *Hoyt v. Ketcham*, 54 Conn. 60, 62; *Upington v. Corrigan*, 151 N. Y. 143, 37 L. R. A. 794; *Ruch v. Rock Island*, 97 U. S. 693; *Boone v. Clark*, 129 Ill. 466; *Southard v. Central R. Co.* 26 N. J. Law, 21. A condition subsequent is not waived by mere indulgence or silent acquiescence in the grantor's failure to perform, unless there be shown some element of estoppel.   1 Jones, Real Prop. § 705; 2 Devlin,

Deeds, § 959; 6 Am. & Eng. Ency. of Law (2d ed.), 508; *Royal v. Aultman & Taylor Co.* 116 Ind. 424; *Pepin Co. v. Prindle,* 61 Wis. 301, 308; *Rowell v. Jewett,* 71 Me. 408; *Upington v. Corrigan,* 151 N. Y. 143. The re-entry by plaintiff's grantor invested him with the full legal title to the premises. 1 Jones, Real Prop. § 716; *Brickett v. Spofford,* 14 Gray, 514; *Hancock v. Carlton,* 6 Gray, 60; *Bowen v. Bowen,* 18 Conn. 535; *O'Brien v. Henry,* 6 Ala. 787; *Dugan v. Thomas,* 79 Me. 221; *Barker v. Cobb,* 36 N. H. 344; *Gilchrist v. Foxen,* 95 Wis. 428. And having such title he could convey the premises to another. *Horner v. C., M. & St. P. R. Co.* 38 Wis. 165; *Langley v. Chapin,* 134 Mass. 82, 87. Numerous cases will be found in the reports where chancery has sustained an action, after condition broken and re-entry, to remove a cloud on the title by canceling the conveyance containing such condition. *Gilchrist v. Foxen,* 95 Wis. 428, 440; *Liebrand v. Otto,* 59 Cal. 242; *Birmingham v. Lesan,* 77 Me. 495, 499; *Mott v. Danville Seminary,* 129 Ill. 403, 415; *Harper v. Tidholm,* 155 Ill. 370, 376; *McClellan v. Coffin,* 93 Ind. 456, 461; *Indianapolis, P. & C. R. Co. v. Hood,* 66 Ind. 580; *Richter v. Richter,* 111 Ind. 456, 461.

*Thomas M. Kearney,* attorney for the *Chicago, Milwaukee & St. Paul Railway Company,* and *James Cavanagh,* attorney for the *Knickerbocker Ice Company,* for the respondents, contended, *inter alia,* that this is an attempt to obtain indirectly from the court that which a court of equity will not do directly. That a court of equity will not entertain an action to aid or enforce a forfeiture is well settled. *Clark v. Drake,* 3 Pin. 228; *Lawe v. Hyde,* 39 Wis. 345; Pomeroy, Eq. Jur. § 459; *Donnelly v. Eastes,* 94 Wis. 390; *Stringer v. K., Mt. P. & N. R. Co.* 59 Iowa, 277. The conduct of plaintiff's grantor in treating obligations imposed upon the grantee in the deed of the strip of land referred to as continuing obligations, after default, and in insisting upon and accepting performance up to what was practically the time of the

alleged re-entry, constitutes a waiver of his right to declare the title forfeited, if such right ever existed. 2 Washb. Real Prop. (5th ed.), 20, 21, and cases cited; Fry, Specific Performance, 536, 537; Parsons, Contracts, *506, *507; *Yancey v. S. & W. R. Co.* 101 Ala. 234; *Ludlow v. N. Y. & H. R. Co.* 12 Barb. 440.

MARSHALL, J. The statement of facts shows that, though there was no controversy but that Uhen conveyed the land to Boyle upon conditions subsequent which were breached, and reclaimed the property by a distinct assertion of his rights — so far as a reclaimer thereof was possible under the circumstances — before the conveyance to appellant, it was held that his first grantee was the owner of the property and entitled to recover costs of the appellant. That conclusion was reached upon several grounds which we will consider.

The principal reason suggested, why it was supposed appellant was not entitled to recover, is that a court of equity will not exercise its jurisdiction to declare or aid a forfeiture, but leave the parties to their remedy at law. We are unable to perceive how that principle applies to this case. Appellant did not seek by her suit to reclaim the property in controversy. Her complaint and the evidence in support of it, at every point, repel any such idea. The pleading distinctly declared that plaintiff was the absolute owner of the property in dispute and in possession thereof. To establish the truth thereof, proof was made that her grantor, under whom all parties to the suit claimed title, sold the property upon conditions subsequent to the grantor of the ice company; that such conditions were breached; and that such grantor made re-entry for the purpose of enforcing a forfeiture of the property to him, and then made a conveyance thereof to appellant. There can be no question but that such circumstances caused the title conveyed to Boyle to revert to

Uhen if his entry was rightful. *Gilchrist v. Foxen*, 95 Wis. 428. The learned circuit judge seems to have supposed, and counsel for respondents now maintain, that the evidentiary facts showing title in appellant, notwithstanding the paper title in the ice company, should have been pleaded. Manifestly, that is a mistake. If one sells and conveys real estate upon condition subsequent, and the title thereto thereafter reverts to him, he may then invoke judicial remedies in respect thereto, pleading his title in general terms the same as if that title were dependent upon any other circumstances. It follows that the judgment appealed from cannot be sustained upon the theory that the action was brought for the purpose of forfeiting the title to the property for nonperformance of the conditions subsequent. It was instituted upon the theory that the title had been already reclaimed and was vested in appellant, and the respondents must stand or fall on the facts in that regard. The court further grounded the judgment on the doctrine that equity will, in some cases, intervene where there has been a failure to perform a condition subsequent, and prevent a forfeiture. Here there was failure again to perceive, as it seems, that the rule mentioned is one invoked to prevent, not to defeat a forfeiture after it has occured. Unless one keeps in mind the peculiar doctrine of equity in respect to this matter he may be misled by the expressions of courts and text-writers as well. In *Donnelly v. Eastes*, 94 Wis. 390, 396 this language was used:

" If there were a rightful entry for condition broken, so that the estate revested under the terms of the deed, or even if the title revested under the terms of the deed without a re-entry, the court is yet not powerless to relieve the defendant from the consequences thereof."

That was said having in mind that, regardless of the express intent of the parties, or the intention inferable from the language used by them, applying strict legal principles thereto, which would effect a reversion of the title, a court

of equity may, in some circumstances, hold the real con-
tractual intent not to be according to the literal meaning of
such language or within the reasonable scope thereof ac-
cording to the ordinary rules for the construction of con-
tracts, but that the condition was created as a mere security
for the performance of an obligation resting upon the
grantee, and give effect thereto in opposition to the ex-
pressed intent of the parties.  By such arbitrary rule of con-
struction the title which would be in the grantor at law is
held to be still in the conditional grantee, and so subject to
control in equity that the conditional grantor may be com-
pelled to accept compensation in money for the damages
suffered by nonperformance of the condition in lieu of an
enforcement of his legal rights, the theory being all the way
through that there has been no real violation of the con-
tractual intent of the parties.  The rule followed in such a
case is the one which is supposed to justify courts in saying
that parties, in stipulating for the payment of a specific sum
as damages for breach of a contract, did not mean what they
said, but intended the sum named to stand as security against
loss from such breach, and the recoverable damages therefor
to be limited to enough to adequately measure such loss.
2 Story, Eq. Jur. (13th ed.), §§ 1314, 1315.  The process by
which courts thus turn a contract which parties say they
made into what the law says on the subject was treated
at considerable length in *Seeman v. Biemann,* 108 Wis. 365.
An eminent text-writer is there quoted, in effect, thus: ' Par-
ties may contract for stipulated damages at their pleasure,
but such damages only as the law says are liquidated, ac-
cording to the artificial rules which have been adopted to
justify courts in saying what parties intended, are in fact
to be regarded as such damages.'  So, as regards a condition
subsequent in a deed, regardless of the intention of the
parties as indicated by the fair meaning of their language,
in certain cases, to prevent the great hardship which would

flow from giving effect to the strict legal contractual intent, the court will, by construction dependent upon no reason which can be easily assigned, other than a long line of precedents grounded wholly upon the arbitrary power of the court, say that they intended something else, and by that means, in theory, not take title from the grantor upon condition after it has reverted to him by breach of condition and assertion of his right, but hold· that the title still remains in the conditional grantee in harmony with the judicial intention, we may call it, and in that way save his adversary from the consequences of his fault, preserving the title to the property in him notwithstanding such fault, giving the grantor a money consideration for his damages. While, viewing the situation from the legal rights of the parties, relief is granted after forfeiture if at all, as said in *Donnelly v. Eastes*, 94 Wis. 390, the absurdity is avoided by the arbitrary holding that no such forfeiture has occurred because the parties intended otherwise, regardless of what they said on the subject. The origin of such arbitrary dealing with contracts in violation of the general rule that courts cannot make contracts for parties — can only interpret them so far as to determine what the parties intended, and enforce such intent, not going for their purpose outside the reasonable scope of the language they saw fit to use to express it — is involved in much obscurity, but it is one of the oldest doctrines of equity jurisprudence, and, although the reason for it is difficult to discover in the light of what judicial remedies are ordinarily supposed to stand for, it has many vigorous defenders. Judge Story, in his work on Equity Jurisprudence (vol. 2, § 1316), says:

"Law, as a science, would be unworthy of the name if it did not, to some extent, provide the means of preventing the mischiefs of improvidence, rashness, and blind ·confidence and credulity on the one side, and of skill, avarice, cunning, and a gross violation of the principles of morals and conscience on the other. There are many cases in

which courts of equity interfere upon mixed grounds of this sort. There is no more intrinsic sanctity in stipulations by contract than in any other solemn acts of parties which are constantly interfered with by courts of equity upon the broad ground of public policy or the pure principles of natural justice."

That was said by the learned author with reference to situations not involving any fraud, either in fact or in law.

The rule of equity discussed is not one of universal application. It does not extend beyond situations where there is some room for saying the conditions were inserted to stand as security, either for the payment of money or the performance of some promise, damages for a breach of which are susceptible of ascertainment by some definite rule, and the doing of the particular thing, or the doing thereof at a particular time, was not the principal object secured by the condition. 2 Story, Eq. Jur. (13th ed.), § 1321; 2 Washb. Real Prop. (5th ed.), 24; *Gates v. Parmly*, 93 Wis. 294; *Nelson v. Stephens*, 107 Wis. 136; *Donnelly v. Eastes*, 94 Wis. 390. Courts and text-writers acknowledge the limitation mentioned to be distinctly marked. This language is used in 2 Story, Eq. Jur. (13th ed.), § 1321:

"It is admitted, indeed, that where the condition or forfeiture is merely a security for the nonpayment of money, there it is to be treated as a mere security and in the nature of a penalty, and is accordingly relievable. But if the forfeiture arises from the breach of any other covenants of a collateral nature, as for example of a covenant to repair, there, although compensation might be ascertained, . . . yet it has been held that courts of equity ought not to relieve, but should leave the parties to their remedy at law."

The subject was discussed at some length in *Klein v. Insurance Co.* 104 U. S. 88, where it was held that the doctrine, that the consequences of nonperformance of a condition precedent are relievable in equity upon the basis of a money compensation for damages suffered, has no application to a case where the condition was inserted in the contract to

secure something other than the payment of money or something having a distinct money value, which was made a principal and essential thing. The case before the court involved the question of whether equity can relieve from the consequences of failure to make payment of a renewal premium upon an insurance policy, the contract stipulating the effect thereof to be to render the policy void. It was contended on the one side that the damage to the company by reason of being out of the money a short time was easily ascertainable, and that, as compensation could be made therefor, equity had jurisdiction to say that the insurance company should take that compensation instead of what was its right under the terms of the insurance contract. The decision was adverse thereto, because the condition was not inserted merely to secure payment of money, but to secure prompt payment in accordance with a general policy of the company, and because the injurious consequences of a violation thereof could not be measured by any definite rule.

It is not strictly accurate to say, expressly or by inference, that relief from a breach of condition subsequent can be granted merely because a stipulation for a forfeiture was inserted in the contract as a security. *Nelson v. Stephens*, 107 Wis. 145. It must stand as security for the payment of money or for the performance of something the breach of which can be definitely measured in money, the doing of the particular thing, or the doing of it at a particular time, not being by the contract expressly made material, or, in other words, of the essence thereof. There is no better illustration of this than the ordinary agreement to pay a certain sum of money at a particular time upon a land contract, coupled with a condition of forfeiture in case of the nonpayment according to the agreement. Ordinarily it is held that the payment of the money is the principal thing. Therefore, equity will give compensation for the breach as to time by the usual rules for measuring loss caused by a breach of an

agreement as to time in the payment of money. But if the contract expressly and unequivocally makes time of payment the principal thing the condition was inserted to secure; equity will not relieve from a breach thereof though no real pecuniary loss be suffered thereby by the person entitled to the benefit of the condition. In *Gates v. Parmly*, 93 Wis. 294, this language was used: "It would seem that where the condition is security for the payment of money or the performance of any particular act, relief may be granted." The broad statement was unnecessary to the decision of the case in which it was used and may be misleading. Manifestly, courts have not yet gone so far as to hold that equity can relieve from the consequences of the breach of a condition wherever it stands as security for the performance of some act. It cannot if the act itself is of the essence of the contract, the principal thing; and it cannot if the damages caused by the breach are not susceptible of accurate determination by calculation, substantially the same as if the act were the mere payment of money.

It is said by Judge Story that the English courts hold that in all cases of forfeiture for the breach of any covenant other than the covenant to pay rent, no relief ought to be granted in equity unless upon the ground of accident, mistake, fraud, or surprise, although the breach is capable of a just compensation. 2 Story, Eq. Jur. (13th ed.), § 1323. A somewhat broader doctrine than that has prevailed in the courts of this country, care being exercised, as indicated in *Klein v. Insurance Co.* 104 U. S. 88, not to substitute a contract of their own for the one the parties made so as to prevent them from having the thing made by them the very essence of their agreement. Probably as valuable a discussion of the scope of the rule, as recognized generally in this country, as can be found, is in the opinion of REDFIELD, C. J., in *Henry v. Tupper*, 29 Vt. 358. In *Grigg v. Landis*, 21 N. J. Eq. 494, it was held that a court cannot relieve from

the consequences of the breach of a condition subsequent that certain improvements shall be put upon granted premises within a specified time, it appearing that time was made by the contract a principal thing; that the condition of forfeiture in such a case is not made merely to secure the making of the improvements, but the making of them within a particular time agreed upon. In discussing the subject the court said:

'It not to be supposed that a court of equity will lightly dispense with contracts made between competent parties, and substitute other agreements more in accordance with variable rules of right and conscience. Such contracts will be enforced according to the intention of the parties expressed and implied, unless it can be shown that thereby some hardship or wrong, not within the presumed contemplation of the parties at the time, will result from such enforcement.'

From what has been said it seems clear that the doctrine, that a court of equity may relieve a party from the consequences to him of his breach of a condition subsequent, does not apply to the facts of this case. The condition was not inserted in the deed to secure the payment of money, nor the performance of any act that could be substantially performed by the payment of money damages. The condition was not only to inclose the granted premises by a good and sufficient legal fence, but it was to maintain the same forever. The grantee agreed to put in culverts where the cross drainage ditches were intercepted by the railway roadbed, and put in a suitable crossing where desired by the grantor, with substantial gates in the side fences, and, by inference, to maintain such connecting culverts, crossing, and gates perpetually. There is no rule by which damages for failure to do those things can be accurately measured in money. Moreover, it is manifest that the performance of the acts mentioned was made a principal thing, a matter of the very essence of the contract. The

learned court said that no pecuniary loss accrued to the grantor by reason of the default of the grantee, and therefore he would hold that equity would shield the respondents from the effects of the default. The fact that no damages accrued to Uhen, which the court could recognize and measure in money, notwithstanding evidence showing a clear breach of the conditions of the deed, should have prevented, rather than called for, an application of the rule mentioned. In *Wafer v. Mocato*, 9 Mod. 112, it was said:

'If a man makes a lease for life upon condition that the lease shall be forfeited if the lessee assigns or aliens it without license, and afterwards the lessee doth assign it without license, that is a forfeiture; and such a forfeiture against which the court cannot relieve, because it is not known what shall be the measure of damages; for the court never relieves but in cases where it can give some compensation in damages, and where there is some rule to be the measure of such damages, to avoid being arbitrary.'

That was quoted with approval in *Sanders v. Pope*, 12 Ves. 281, and is found often referred to in American decisions. The idea running through all the authorities is that one of the essentials to the application of the doctrine, that a court of equity may relieve from the consequences of a breach of a condition subsequent, is that the damages flowing from the breach must be such that the court can measure the same in money by some established rule.

If the breach of such a condition as those involved in this case could be under some circumstances dealt with by a court of equity, so as to save the wrongdoer from the legal consequences thereof, respondents would still have difficulty, for equity does not use its jurisdiction to save a party in such a case, if his default was wilful or inexcusable. 1 Jones, Real Prop. § 732. The doctrine applies that he who seeks equity must apply with clean hands. There must be grounds for equitable relief falling within the scope of the jurisdiction of the court, and the circumstances of the par-

ticular situation must be such as to excite a court of conscience to activity. How does this case stand tested by that rule? Neither Boyle nor his grantee, the *Knickerbocker Ice Company*, constructed or attempted to construct the connecting culverts to preserve the usefulness of the cross drainage ditches. The failure was not caused by any mistake, nor was it the result of mere negligence. The obligation of the deed was intentionally disregarded. Uhen called Boyle's attention to such obligation at the time he was preparing the granted premises for the railroad track. He was informed, in effect, that the culverts would not be put in because the purpose thereof could be served in another way. It is no answer to the neglect to construct culverts to say that the ditches made on either side of the granted premises, and the connection thereof with the cross drainage ditches, served the purpose of the culverts. The grantor was entitled to have just what he bargained for. The agreement to inclose the granted premises was not performed, though Boyle and his grantee, the ice company, were requested time and again to do so, attention being called at one time to the fact that the granted premises could be reclaimed for the default in that regard. Though in June, 1899, Uhen consented to a delay in the construction of the fence till after harvest time, upon condition of its being then constructed, no attempt was made to fulfil that condition. In November, 1899, the railroad company inclosed the center seventeen feet of the premises, being that portion theretofore leased to it by the ice company. That was not a substantial compliance with the conditions of the deed. On the contrary, it was a wilful disregard thereof. It was a distinct declaration to Uhen that the defendants proposed to build the fence in such manner as they saw fit, instead of to inclose the thirty-three-foot strip of land according to the terms of the deed. Such a disregard of the rights of Uhen, in the absence of proof of a waiver thereof on his

part, leaves respondents in no situation to be recognized in a court of equity.

It is suggested that Uhen waived performance of the conditions of the agreement, and that his re-entry was not rightful on that account. It is elementary that a person circumstanced as he was may lose the benefit of the condition of his grant by an express or implied waiver thereof. *Andrews v. Senter*, 32 Me. 394; *Ludlow v. N. Y. & H. R. Co.* 12 Barb. 440; *Guild v. Richards*, 16 Gray, 309; *Hubbard v. Hubbard*, 97 Mass. 188; *Sharon I. Co. v. Erie*, 41 Pa. St. 341; *Grigg v. Landis*, 21 N. J. Eq. 494; *Bonniwell v. Madison*, 107 Iowa, 85; 1 Jones, Real Prop. § 699. However, the record before us does not disclose evidence to establish a waiver. Mere silence or delay is not sufficient for that purpose any more than to create an estoppel which will prevent the assertion of a right. That was all there was in this case. Where the benefit of a condition subsequent has been adjudged lost by silence or delay, the person failing to perform relied upon the attitude of his obligee as evincing consent, and incurred expense or placed himself in such a situation by reason thereof that a change of the apparent position of such obligee, if given effect, would seriously prejudice the obligor. *Ludlow v. N. Y. & H. R. Co.*, *supra*, is a good illustration. The plaintiff conveyed land for right of way, to a railway company, upon condition of its road being completed over the premises on or before a particular day named in the conveyance. The condition was not satisfied. The grantor failed to claim the benefit of the condition for two years after the breach. He kept silent during that time as to any intention to claim a forfeiture, and in the meantime, to his knowledge, the grantee actually constructed the road as provided in the grant. The court held that the condition of the grant was waived by the conduct of the grantor, not because of mere delay or silence, but because such conduct induced the grantee to expend money which would be lost if he were

allowed to reclaim the property.   In *Hubbard v. Hubbard,*
97 Mass. 188, the conditional grantor received benefits from
the grant after the breach, keeping silent as to any purpose
to insist upon a forfeiture.   In *Gray v. Blanchard,* 8 Pick.
284, 292, it was said that mere indulgence alone is never
construed into a waiver of a breach of condition.   In *Grigg
v. Landis,* 21 N. J. Eq. 494, a breach of a condition as to
making improvements upon the granted premises was held
waived because the grantee, relying upon indulgence in that
there was delay in claiming a forfeiture, and silence as to
any intention in that regard, conveyed the property to an-
other, who in good faith made the improvements agreed
upon and made payments of the purchase money to the
grantor, who received the same, but without knowledge of
the breach of the condition.

   Further discussion of this branch of the case, or citation
of authority, seems unnecessary.   There is some ground for
saying that the demand for the construction of the fence,
long after the breach in respect to the culverts, indicated a
purpose to submit permanently to the method adopted by
the grantee for conducting water from the cross drainage
ditches off from the grantor's land, so that, if such demand
had been complied with, all the conditions of the deed
would be deemed waived.   But the fence was not con-
structed.   The act of building a fence inclosing the center
seventeen feet of the premises was such a manifestly inten-
tional disregard of the obligations contained in the deed,
that the grantor lost no rights merely by not objecting
thereto.   It has never been held that an open, intentional
violation of the obligations of a grant is sufficient in equity,
coupled with mere silence on the part of the obligee, to
constitute a waiver of strict performance.

   The only other ground upon which judgment was awarded
to respondents is that the premises in controversy were en-
tered upon by consent of the ice company and the railway

track laid down and devoted to public purposes, and that the only remedy of appellant, if she possesses any, is under the statute in respect to the enforcement of the rights of a landowner in case of the occupancy thereof by his consent, express or implied, by a railway company, without its having compensated him therefor. Manifestly, that does not apply to the facts of this case, for two reasons: first, the track in question was laid down and operated for purely private purposes; second, the entry for that purpose is referable to an express contract. There was no intention, at the time of constructing the road, or thereafter, to devote it to any purpose other than the private use of the ice company. The evidence is all one way on that subject. It is absolutely essential to the right to exercise the power of eminent domain that there be a *bona fide* intention to devote the property, when acquired, to public use. *Chicago & N. W. R. Co. v. Morehouse, ante,* p. 1. The learned circuit court, in an opinion filed, seems to have had that in mind, and comprehended that the spur track in question was a purely private affair, and that, without a change in the attitude of the railway company in respect thereto, it could not, by adversary proceedings, acquire the right to continue the track if the title to the right of way were found to be in appellant; but the undisputed evidence as to the character of the way was lost sight of in making up the findings. In the opinion it is said, in effect: True, there can be no right of way secured by condemnation in the existing circumstances, but, though the track is now but a private way, it is competent for the railway company to make it a public way and to invoke the power of eminent domain to acquire a property right in the premises for that purpose, and that is sufficient to warrant a court of equity in refusing to aid appellant to secure the undisputed enjoyment of her property. That is the idea we gather from the opinion. The mere statement of the proposition is sufficient to condemn it. It

has often been held that if the owner of real estate permits a railway company to occupy the same with a public railway track, he will be deemed to have consented to take, as compensation for the permanent use thereof, what he can obtain by the procedure laid down by the statutes for the protection of his constitutional rights. But it has never been held, and it would be manifestly absurd to hold, that consent can be obtained, expressly or by implication, for the occupancy of land by a railway company for a private purpose, and the possession thus obtained be referred to as evidence of consent to the occupancy of the property for public purposes, so as to render the doctrine mentioned applicable.

It follows from what has been said that at the time of the commencement of this action appellant was the owner in fee simple and in possession of the premises described in the complaint, and that, under existing circumstances, she was entitled to invoke the jurisdiction of equity to quiet her title thereto against the defendants and to enjoin them from interfering with her possession thereof. The case seems clear upon all the points involved.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in favor of the plaintiff according to the prayer of the complaint.

CASSODAY, C. J. I do not understand this to be a bill in equity brought by the defendants, or either of them, to relieve themselves from a forfeiture. On the contrary, I understand it is a bill in equity filed by the plaintiff to have a forfeiture adjudged in her favor, and to enforce the same. The complaint alleges that at the times mentioned the plaintiff was the owner in fee simple and in the possession of the premises described. Each of the answers denies such allegations, and alleges that at all such times the defendant

ice company was the owner in fee simple and in the exclusive possession of such premises. Such was the controversy between the parties. At the close of the testimony the plaintiff requested the court to find that January 4, 1900, Boyle's grantor made re-entry in person upon the land in question, and declared the title thereto forfeited for noncompliance with the condition subsequent in the deed, and took possession of the same, and thereupon conveyed the same to the plaintiff. The trial court refused to so find, presumably upon the ground that this court had repeatedly held that "courts of equity will not take jurisdiction of a case for the purpose of *aiding or enforcing a forfeiture,* but will leave the complainant to his remedy at law." *Clark v. Drake,* 3 Pin. 228; *Lawe v. Hyde,* 39 Wis. 345; *Mills v. Evansville Seminary,* 47 Wis. 354; *S. C.* 52 Wis. 669; *S. C.* 58 Wis. 135; *Hagerty v. White,* 69 Wis. 317, 326. In my judgment it is not the case of a party in the exclusive possession of land after the breach of condition subsequent, and then filing a bill in equity to quiet the title and protect such possession. To my mind the trial court properly relegated the plaintiff to her remedy at law.