## VINCENT v. GURLEY.
### No. 904.

Court of Civil Appeals of Texas. Waco.
March 27, 1930.

Rehearing Denied May 1, 1930.

Nat Harris, of Waco, for appellant.
Bryan & Maxwell, of Waco, for appellee.

BARCUS, J.

This is an appeal from a permanent injunction granted appellee against appellant on final hearing of cause in the trial court. The facts which we deem material are without dispute. In March, 1925, appellant purchased 471 acres of land from J. S. Harrison and J. B. Earle, which was conveyed by warranty deed, and which deed contained the following recital: "J. S. Harrison, one of the grantors herein, reserves the right of ingress and egress forever, across the said premises herein conveyed, to and from a farm adjoining the tract herein conveyed, which is owned by the said J. S. Harrison. But this easement is granted upon the following conditions: That such right-of-way shall begin and go through a lane to what is called Cannon's southeast corner to gate at barn, and through gate and follow road as now laid out along bluff, such roadway to be not over twenty feet wide, and to be the roadway as now located; and said grantor, his heirs or assigns, or the tenants of either, must close all gates and bear one-half of the expense of upkeep on said gates through which they pass in using this right-of-way; otherwise, such right-of-way shall cease and be at an end."

In March, 1927, J. S. Harrison conveyed the tract of land referred to in the foregoing deed to appellee, D. R. Gurley, and in said deed also specifically conveyed to appellee the right of ingress and egress reserved in said deed, setting forth same in substantially the same language used in said deed.

In February, 1928, the gate at the barn referred to in said deed became in such condition that it was necessary for the same to be rebuilt, and appellant had said work done at a cost of $10.25. On June 11, 1928, appellant wrote appellee a letter, stating that the cost of the material and labor in building the gate was $10.25, and requested appellee to mail him check for one-half the cost thereof. In said letter appellant called appellee's atten-

tion to the fact that he claimed appellee and his tenants were using a different passage from that called for in the easement, and requested that they use the original passageway. With said letter he inclosed a bill, there being some controversy as to whether the bill inclosed was for $10.25 or $12.25. As we view the matter, it is immaterial, since the letter stated that the amount was $10.25, and asked for a check for one-half of said amount. Said letter was received by appellee, and he did not answer or pay any attention thereto. On August 16, 1928, appellant, by an instrument in writing which was on said date filed for record, in so far as he had authority, revoked the easement or right of ingress and egress contained in the deed above recited, stating that he was doing so because J. S. Harrison and his assigns had failed and refused to bear one-half the expense of the upkeep of said gates, and had diverted the roadway as established at the time the easement was granted, and had failed and refused to shut the gates. Said instrument closed with these words: "Now therefore, I, Charles N. Vincent, the present legal owner and holder of the above described tract of land and the grantee in said deed, by reason of the premises and the failure and refusal of the said J. S. Harrison and his assigns to comply with the terms of said easement, have revoked and cancelled, and by these presents do here now revoke, cancel and annul said easement to all intents and purposes, so that the right of ingress and egress in said easement granted is forever terminated, and the above described servient estate is released and discharged from said easement."

At the time said instrument was recorded appellant notified appellee thereof. Appellee testified that he had personally seen said instrument. Appellee made no reply to the notice which appellant sent him that said easement had been revoked. In January, 1929, appellant locked the gate, thereby preventing appellee and his tenants from going through same. Appellee then filed this suit on January 31, 1929, for an injunction restraining appellant from locking said gate, appellee alleging in said application simply the fact that he was entitled to an easement across said land and through said gate by reason of the easement retained in the deed from Earle and Harrison to appellant in March, 1925. A temporary writ of injunction was granted. On February 13, 1929, appellant filed his answer and motion to dissolve said injunction, alleging that he had canceled said easement because appellee was using a different road from that described therein, and because he and his tenants had failed to keep the gates shut, and because appellee had willfully failed and refused, after request and notice, to contribute to the upkeep of the gates through which the roadway passed. On February 28, 1929, appellee filed his first supplemental petition, in which he denied that he had failed and refused to contribute to the unkeep of the gate, and alleged that he then stood ready to pay his legitimate share in the proper unkeep and maintenance thereof. On April 8, 1929, appellee filed an amended petition and application for an injunction, on which he went to trial, in which he specifically denied all the allegations contained in the answer of appellant, and set out in hæc verba the easement contained in the deed from Harrison and Earle to Vincent, as above quoted. He further claimed the right to use the road that he was then using by reason of ten-year limitation or prescription right. In said pleading appellee made no reference to any tender or offer to pay any portion of the expense of the upkeep of the gate. During the trial of the case appellee testified that he thought the bill of $10.25 for rebuilding the gate was in order, and tendered into court $5.13, one-half of the $10.25. There is no suggestion in the record that said amount, or any other amount, had been previous to said time tendered to appellant. Appellant refused to accept said amount, claiming that he had already elected to and had canceled said easement by reason of appellee having failed and refused to pay his portion of the upkeep.

The cause was tried on April 15, 1929, and taken under advisement by the court until June 26, 1929, at which time the trial court entered judgment perpetually enjoining appellant from declaring the easement canceled by reason of any matter that had transpired between the parties up to that time, and directing the clerk of the court to pay appellant the $5.13 which had been by appellee deposited in the registry of the court.

In the trial court appellant contended that appellee had not only failed to pay one-half of the upkeep and building of the gate, but that he and his tenants had left the gates open, and that they were using an entirely different road from that described in the easement. Appellant's only contention in this court is that he was authorized to cancel and annul the easement by reason of appellee having failed to pay one-half the cost incident to rebuilding the gate. The sole question therefore for determination is whether appellant, under the facts, had the right to and was justified in canceling and annulling the easement which appellee had across said land, and whether the trial court, under the undisputed facts, was authorized to require appellant to keep said gates open and give appellee and his tenants a continuous right to go through said gates and use the roadway across said land.

As stated, appellee, both by his pleadings and testimony, admitted that he knew the exact terms and conditions of the easement or right of way that he had across appellant's land. Said easement provided specifically

that, if appellee or his tenants failed to keep the gates closed, or if they failed to pay one-half of the upkeep of said gates, that same ceased and was at an end. Under its provisions there was no action necessary for appellant to take to declare or to make said easement at an end, if appellee or his tenants failed or refused to do either of the things provided for. Under appellee's testimony, the $10.25 expense of building the gate was a legitimate charge. He failed, however, when he received notice thereof in June, 1928, to make any effort to pay his pro rata part. He took no action and made no protest at the time appellant filed the written annulment and cancellation of said easement on August 16, 1928. When he filed his original application for an injunction in January, 1929, he made no reference to or suggestion that he would pay any portion of the upkeep. In his final amended pleadings, filed in April, 1929, he specifically denied that he owed any portion of the cost of rebuilding said gate. Upon the trial thereof he admitted that he had received the letter stating that the bill was $10.25, and admitted that said amount was in order, and then for the first time tendered into court the one-half thereof. Appellee made no contention either by pleading or proof of any fact or circumstance that in any way tended to excuse or relieve him from his obligation to pay one-half of the expense of said gate.

The general rule is that a court of equity is not authorized to set aside and annul a contract made by parties with full knowledge of all of its terms and conditions, in the absence of fraud, accident, or mistake, or some undue advantage taken by one of the parties. 21 C. J. 101, 102; Pacific States Savings, Loan & Building Co. v. Green (C. C. A.) 123 F. 43; Kann v. King, 204 U. S. 43, 27 S. Ct. 213, 51 L. Ed. 360; Maginnis v. Knickerbocker Ice Co., 112 Wis. 385, 88 N. W. 300, 69 L. R. A. 833. In 21 C. J., supra, the rule is stated: "It (equity) does not extend so far as to authorize a court of equity to disregard and set aside the valid stipulation of the parties upon the performance of which their rights are made to depend. * * * Thus relief is not ordinarily given in case of breach of a covenant to insure, to make repairs, to pay taxes, or to do or not to do any specific act. * * * Equity will not relieve against a claimed violation of contract without any circumstances of justification or excuse."

Our courts uniformly hold, unless equity intervenes, that an estate held upon a condition subsequent is defeated when the condition is broken and the grantor makes entry with intent to forfeit the grant. Citizens' Water Co. v. McGinley (Tex. Civ. App.) 175 S. W. 457, 459; Jeffery v. Graham, 61 Tex. 481; Odessa Improvement & Irrigation Co. v. Dawson, 5 Tex. Civ. App. 487, 24 S. W. 576; Hohman v. Rochester Swiss Laundry, 125 Misc. Rep. 584, 211 N. Y. S. 217; Henneky v. Stark (Sup.) 128 N. Y. S. 761; Watzman v. Unatin, 101 W. Va. 41, 131 S. E. 874; Maginnis v. Knickerbocker Ice Co., 112 Wis. 385, 88 N. W. 300, 69 L. R. A. 833; 18 C. J. 383 (5). In 18 C. J., supra, the rule is thus stated: "Upon entry or claim of breach of a condition subsequent, the grantor or his heirs becomes seized of the estate had at the time of making the grant upon condition, freed from any subsequent lien, encumbrance or limitation, and a person who re-enters for breach of a condition may invoke judicial remedies, relying generally upon his title to the same as if no disturbance thereof had occurred by reason of the grant on condition."

In Jeffery v. Graham, supra, the deed in controversy provided that no gambling or selling of spirituous liquors could be done on the premises, and that a violation thereof would make the deed null and void. The court held that, since that condition had been broken, the title reverted to the original grantor, and stated: "Although conditions subsequent in conveyances of land are not viewed with favor, yet where the condition is in its nature executory, it is to be distinguished, in regard to its absoluteness and effect, from those limitations or conditions in a deed which merely stipulate for the doing or not doing of specified things by the grantee for the breach of which no forfeiture of the estate ensues."

In Citizens' Water Co. v. McGinley, supra, the deed provided that the grantee was to drill a well and furnish the grantor free water for the use of his blacksmith shop, and provided that, if the grantee failed, it should reconvey the land to the grantor. The well was not dug, and suit was brought to cancel the deed. The trial court canceled the deed, and its judgment was affirmed. The court in said opinion stated: "An estate held upon condition subsequent is defeated when the condition is broken and the grantor makes entry upon the premises with intent to forfeit the grant."

Equity is invoked to relieve parties of many embarrassing situations, but equity cannot and should not make contracts between parties. Neither should equity be used to break a valid and binding contract between parties, where no equities are claimed to exist. Wheeler v. Holloway (Tex. Com. App.) 276 S. W. 653. Appellee contends that, since the cost of the gate was trivial, appellant should not be permitted to declare the easement forfeited and re-enter and take possession. There is nothing in either the pleadings or testimony to show that the upkeep of the gates could under any event have been more than is here involved. The parties deliberately and plainly wrote into the contract that the easement would as a matter of fact cease to exist, if the grantee failed to pay his half of the upkeep. Appellee was notified of the

expense, was then notified of the fact that the easement had been declared forfeited, and that the grantor had re-entered and re-possessed himself thereof, and then failed, neglected, and refused to pay any portion thereof. He testified that he knew the gate had been rebuilt, and during the trial conceded that the expense incident thereto was in order, and then for the first time tendered appellant the one-half thereof. After appellant had exercised his right under the provisions of the contract to declare the easement canceled, and had re-entered and taken possession thereof, a court of equity could not require him to reinstate said easement and set aside said forfeiture, and re-enact for the parties the original contract.

The facts in this case have been fully developed. Appellee, under the undisputed facts, is not entitled to the injunction prayed for or which was granted. The judgment of the trial court is reversed, and the injunction is dissolved.

GALLAGHER, C. J., took no part in the consideration and disposition of this case.