# CHARLESTON.

Louis Watzman et al. v. Harry L. Unatin, etc. et al.

(No. 5427)

Submitted February 16, 1926.   Decided February 23, 1926.

1. EVIDENCE—*If Written Contract on Face Imports Legal Obligation, Without Uncertainty as to Object or Extent Thereof, Parol Evidence is Not Admissible to Vary Its Terms.*

   When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or the extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. Parol evidence will not be admitted to vary its terms. (p. 49.)

   (Cancellation of Instruments, 9 C. J. § 56; Evidence, 22 C. J. § 1664.)

2. CONTRACTS—*Parties May Make Performance of Any Unimportant Covenant, Agreement, or Duty Condition Precedent, and Contract Will be Enforced as Made.*

   Under the broad liberty of contract allowed by law, parties may make performance of any comparatively, or apparently, trivial and unimportant covenant, agreement or duty under the contract a condition precedent, and, in such case, the contract will be enforced or dealt with as made. (p. 51.)

   (Contracts, 13 C. J. § 532.)

3. DEEDS—*If Conditions Precedent Are Broken, Law Does Not Relieve Party Violating Contract, Although Grantor by Reason Thereof Has Regained Possession of Property.*

   Where conditions broken are conditions precedent, the law does not relieve a defendant who violates his contract and the grantor by reason thereof has regained possession of the property. (p. 51.)

   (Deeds, 18 C. J. § 390.)

4. SAME—*Where Parties Have Enforced Forfeiture by Providing for Re-entry for Breach of Contract, and Re-entry Has Been Made, Equity Cannot Give Relief.*

   While equity generally will not enforce a forfeiture, yet, where the parties themselves have enforced it by providing for a re-entry for breach, and re-entry has been made, a court of equity is powerless to relieve. (p. 51.)

   (Deeds, 18 C. J. § 445.)

5. QUIETING TITLE—*Grantors, Re-entering After Grantee Defaulted in Performance of Conditions Precedent, Held to Have Right to Quiet Title to Real Estate by Cancellation of Recorded Instruments Providing for Sale Thereof.*

A case where the plaintiffs have a right to quiet title to their real estate by the cancellation of two written instruments providing for the sale thereof, which are of record, and which are in the hands of the defendant and which have been rescinded by a re-entry of the grantors after the grantee had defaulted in the performance of their conditions. (p. 52.)

(Quieting Title, 32 Cyc. p. 1322.)

6. DEEDS—*Loss, if Any, Occasioned to Grantee by Re-entry of Grantor for Breach of Express Provisions of Contract Held Damnum Absque Injuria.*

The re-entry of the plaintiffs under the express provisions of the contract, being lawful, the loss, if any, occasioned thereby to the defendants, is *damnum absque injuria*. (p. 53.)

(Deeds, 18 C. J. § 445.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Hancock County.

Suit by Louis Watzman and another against Harry L. Unatin and others to quiet title. Judgment for plaintiffs, and defendants appeal.

*Affirmed.*

*Handlan, Garden & Matthews* and *J. M. Ritz,* for appellants.

*Victor J. Kehrer* and *Nesbitt, Goodwin & Nesbitt,* for appellees.

WOODS, JUDGE:

The plaintiffs, Louis Watzman and William Watzman, are Russian Jews living in Pennsylvania, and the principal defendant, Harry L. Unatin, also a Russian Jew, is a citizen of Steubenville, Ohio.

Unatin was in the mercantile business at Weirton and Beech Bottom, in 1916. He sold the Weirton store in 1916, and the one at Beech Bottom in 1919. Louis Watzman with a man by the name of Morgan purchased the Beech Bottom store. This was the first time this particular Watzman and

Unatin had met. As the latter two men were going down street one day in Wheeling, they met Harry L. Stein. Unatin had formerly known him and introduced him to Watzman. The result of this meeting was that a partnership was formed between these three and William Watzman to put upon the market 287 lots in Lorain, Ohio, which Stein had theretofore optioned to himself. $52,225.00 was subscribed to float this deal. Unatin claims to have contributed $12,556.25. This partnership was formed September 27, 1919. The company was to bear the name U. S. W. Realty Company. The record is indefinite as to the extent of the business transacted under this partnership. About November 21st, Stein having in the meantime in some way dropped out, the two Watzmans and Unatin formed another partnership for the purpose of purchasing lots at Weirton, West Virginia. The final memorandum was executed July 10, 1920. The Watzmans were to put in $75,000.00 and Unatin all he had. Unatin claims to have put in $8,000.00. This partnership was styled ''Enterprise Land & Building Company'', and claims to have secured title to 333 acres adjacent to the city—including what was known as the ''Tarr Estate.'' The Watzmans became dissatisfied with the way Unatin was conducting the business from an office in Wheeling, involving both partnerships. Suits were brought against Unatin by the Watzmans both in Hancock county, West Virginia, and Jefferson county, Ohio, charging him with misconduct and fraud and asking for an accounting. The Watzmans charged that neither Unatin nor Stein had in fact put any money in the Lorain partnership; that Baker, the owner of the Lorain lots, made two options to Stein—one for approximately $26,000.00 and the other for $52,000.00; that the Watzmans put in $26,000.00 cash in the belief that the partnership was paying $52,000.00 for the lots; that while Unatin and Stein made their checks for their respective shares on the latter basis, by an agreement with the owner of the lots, their checks were returned to them. In the instant suit it was developed that Stein and Baker testified that the Stein and Unatin checks were returned as aforesaid; however, Unatin enters a denial of such fraudulent action. Both suits were well under way—the Hancock county prop-

erty being in the hands of a receiver—when, in order to speedily adjust matters, on August 30, 1921, papers agreeing to arbitrate matters were prepared and signed by the parties. Two arbitrators were to be selected by the Watzmans and two by Unatin, and the four were to select an umpire. The Watzmans executed a bond and Unatin a deed of trust on his interest in the Weirton property to abide by the decision. But the arbitrators failed to agree upon the fifth person and the scheme of arbitration was abortive. The parties and their counsel met several times after the arbitration was abandoned, and finally the three agreements were entered into upon which the plaintiffs' bill is here based, being designated "A," "B" and "C"—the first two dated October 28, 1921, and the third, October 31, 1921. Agreement "A" recites the purpose in these words: "And whereas, said plaintiffs and defendant are desirous of effecting an immediate settlement between them of the two aforegoing law suits, now, therefore, in settlement of said causes the plaintiffs and defendants agree to the following terms." The terms agreed upon are:

"1st. Said two causes are to be dismissed, each party to pay their or his own costs. But the costs in either case shall not include depositions taken in said cause, but it is expressly agreed that the costs of the depositions shall be borne by the party at whose request the depositions were taken.

"2nd. Said causes are to be marked 'Settled, dismissed and costs paid.'

3rd. Said defendant is to make, execute and deliver to the plaintiffs a general warranty deed of the seventy-one (71) lots in Superior Sub-Division, Elyria Township, Lorain County, Ohio, and is to make a quit-claim deed of all his interest in said sub-division standing in his name and that of Louis Watzman. Said defendant's wife, Rebecca Unatin shall join in said deeds in order to release her dower interest therein.

"4th. Said defendant is to make, execute and deliver to the said plaintiffs, or to such person as plaintiffs designate, a warranty deed, with release of dower by Rebecca Unatin of all his interest in

the property in Weirton, West Virginia, which is made subject of the suit in Hancock County. Said conveyance shall also include all his interest in the accounts, office fixtures, furniture, supplies, steam shovel, automobile and all other chattels, property or rights which have heretofore been the property of The Enterprise Land and Building Company or which may have been acquired by R. R. Hobbs, Receiver of said Company.

"5th. The money in the hands of the Receiver is to be paid to the plaintiffs after deduction therefrom of all taxes due this year on said Weirton property, or interest due on the note secured by deed of trust thereon and the costs of the receiver ship (but this cost shall not include any of the costs of the suit).

"6th. Said defendant shall give a promissory note to the said plaintiffs in the sum of Five Thousand Dollars ($5,000.00) bearing interest at the rate of five per cent (5%) and due on or before April 1st, 1922. This note shall be secured by a deed of trust on the defendant's Beech Bottom property standing in the name of Rebecca L. Unatin, which property is already covered by deed of trust by Rebecca and Harry L. Unatin to W. B. Taylor, Trustee. It shall be understood that this note is not subject to renewal but must be paid at maturity and that failure to pay said note shall give the Watzmans the authority to sell said property under said deed of trust in order to pay off said note. In the event that it shall be necessary to sell said property under the terms of said deed of trust and that less than Five Thousand Dollars ($5,000), in addition to costs, expenses and interest is received therefrom, then the plaintiffs have the right to cancel a certain contract which they by this agreement agree to and do enter into, unless defendant, within five days from said sale, pay the difference between what the property was sold at and the $5,000.00.

"7th. The said plaintiffs, Louis Watzman and William Watzman, in consideration of the settlement of these lawsuits and of the terms of settlement do hereby agree to enter into an agreement

> to bargain and sell to said defendant, Harry L.
> Unatin, the property, known as the Tarr estate
> and located in Hancock County, at Weirton, West
> Virginia. Said defendant shall be empowered to
> carry on the business of The Enterprise Land and
> Building Company and use that name in said
> business if he so desires. The terms of said agree-
> ment are to be made a part of this settlement as
> · if written into it.''

The second agreement, known as the ''land agreement''
was executed in pursuance of the seventh clause in exhibit
''A.'' By the land agreement the Watzmans agreed to sell
the Weirton property for $59,000.00 less the let amount by
them received from said receiver; that in addition to this
payment, Unatin was to assume the deed of trust then exist-
ing on the property amounting to about $8,245.00. Unatin
was to pay $5,000.00 within the year, $20,000.00 during the
second year, and the balance during the third year. The
whole consideration was to bear interest at the rate of 5%
per annum. The payments were to be made in this manner:
Unatin was to have the right to sell the unsold lots in the
sub-division and to pay the first parties 70%, retaining
30% for himself. Each was to be sold for not less than
$125.00. On the lots already sold the Watzmans were to
receive 80% and Unatin to retain 20%. Monthly itemized
statements were to be made, and duplicates of lot applica-
tions were to be furnished with these statements, and monies
due to be forwarded with each report. Books were to be open
to the plaintiffs. William Watzman was to hold the prop-
erty as trustee, and was to make a good deed to any purchaser
who had paid the full amount in. Unatin was given the right
to use the personal property of the Watzmans, consisting
mainly of a steam shovel, Dodge automobile, street grader,
adding machine, typewriter and office furniture. Proceeds
of sale of any personal property was to be divided 80% to
the Watzmans and 20% to Unatin. It was further agreed
that *time was the essence of the contract,* and *if default should
be made in any part or if defendant should fail to pay the
promissory note for $5,000.00,* the plaintiffs might *re-enter and
re-possess* themselves of *all the property* then in the hands of

Unatin *without notice* and *without liability*.   Unatin should
be then allowed to "retain such money as he may have col-
lected and properly held under this contract and *further re-*
*lations between the parties shall be at an end."*   The rental
of the steam shovel was to be divided upon an 80 and 20%
basis.   The agreement further expressly provided that the
defendant should not be responsible for any "expenses or
indebtedness of any kind incurred by second party in con-
nection with his carrying on of said business or the making
or executing of deeds, descriptions, improvements or changes
of any kind."   In addition to these provisions, Unatin was
to give to the first parties a surety bond conditioned, "that
he would keep correct accounts of said business and faith-
fully account for the monies to be paid to them by him."
This written agreement is the foundation stone for plain-
tiffs' suit.   The third agreement, exhibit "C," seems to have
been made for the purpose of giving Unatin an instrument
to be recorded.   It incorporates by reference the "land agree-
ment."   Under it Unatin's right to carry on the business was
shown.   It was the only instrument recorded at first, and was
the only instrument acknowledged by the Watzmans.   Una-
tin proceeded under these agreements to sell the lots in Han-
cock county.   By a writing, dated January 26, 1922, he con-
veyed to E. A. Ferguson and E. A. Wolfe, both of Pittsburgh,
Pa., the rights or options to sell, two certain tracts of land,
situate on the waters of Kings Creek, Hancock county, known
as the "Tarr Estate," conveyed by said Watzmans in the
two certain written agreements, executed as aforesaid, in trust
to hold and at their discretion from time to time to exercise
said rights or options granted in the Watzmans' instruments;
the trustees, said Ferguson and Wolfe, jointly, to be desig-
nated as the "New Town Builders Company".   This instru-
ment set out at length the scheme of promoting the sale of
said lots.   Along in the spring of 1922, and early summer of
that year, the Watzmans became dissatisfied with the manner
in which Unatin was performing his trust.   The Watzmans
claimed that he failed to make proper accounting, that he
stealthfully made sale of the steam shovel and did not account
for the proceeds of its sale.   The Watzmans took possession

of the office and fixtures, evicted Unatin and re-entered the premises on the 15th day of July, 1922. This action was taken under the express condition made in the agreement that if Unatin should default in any of the conditions of the contract that the plaintiffs might "re-enter and repossess themselves of all of the property in the hands of Unatin without notice and without liability", and that "thereupon further relation between the parties was at an end". The suit here was brought to October Rules, 1922, for the purpose of canceling Exhibits "B" and "C" as clouds upon Watzmans' title to the real estate of The Enterprise Land and Building Company which they had sold Unatin.

Unatin answered the bill, making a general denial of those matters detrimental to his contention, and asks affirmative relief on the ground that although default was made, under the circumstances, equity will relieve from the so-called forfeiture and asks that the forfeiture be set aside, plaintiffs be ousted from the property, and the same be restored to the defendant —in fact, that the contracts that the plaintiffs seek to cancel as clouds upon their title, be specifically enforced. To the facts set up to sustain their cliam for this relief the plaintiffs make a special reply in writing. On the issues raised on these pleadings, the circuit court granted the relief prayed for by the plaintiffs, canceling and setting aside the exhibits "A", "B" and "C" as clouds upon the plaintiffs' title. The relief asked for by the defendant was denied. To this action of the court, the defendant prosecutes this appeal.

The appellant for reversal relies upon the following as error: (1) The demurrers to the original bill and amended bill should have been sustained; (2) the Court should not have canceled, set aside and held for naught exhibits "B" and "C"; (3) the Court should have found that the plaintiffs were not entitled to any relief and should have dismissed their bill and amended bill; (4) the Court should have found that the dispossession of the defendant by the plaintiffs was wrongful, and should have required the plaintiffs to account for all monies collected by them for lots theretofore sold; that they should have fully discovered to defendant what lots, if any, they sold after they dispossessed the defendant, the

prices received therefor, and to whom the sales were made and the terms of such sales, so that the defendants would be in possession of sufficient information to enable them to accept such sales or repudiate the same; (5) the Court should have ascertained the damages, if any, to which the defendants are entitled because of the wrongful acts of the plaintiffs, and should have entered a decree against the plaintiffs for such damages. These assignments are interdependent, thus making consideration in order of sequence impracticable.

We have only attempted to give a general outline of the business relations of the Watzmans and Unatin. Many of the details are necessarily omitted. Nor are they germain to the issues here. The contention of the defendant that a penciled memorandum made by a friend of the Watzmans, designated as the "Wasser memorandum", was the real agreement is not tenable. According to the defendant it was turned over to the Watzmans' attorneys three weeks before the contracts were signed. Watzmans deny any knowledge of such a paper. However this may be, all prior negotiations were merged into the later written agreements. Its terms are hence unimportant. It is plain that the contracts "A", "B" and "C" were entered into for the purpose of concluding the litigation and establishing the future business relation of the parties. All former dealings between the parties was water over the wheel. The three contracts became the chart of their business relationship thence forward. While the terms of these agreements may seem strict, it is apparent that Watzmans—doubtless believing that Unatin had wronged them in the Lorain deal—desired to protect themselves from future like conduct. Be that as it may, Unatin willingly subscribed to the conditions which he now claims here to be harsh. The contracts are clear and unambiguous. "When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. Parol evidence will not be admitted to vary its terms." *Jones* v. *Kessler*, 98 W. Va. 1. Hence the rights of the parties

must be determined from these three contracts alone. We already have stated the salient provisions of these instruments. The right of re-entry of the plaintiffs, which they have exercised, of course, is dependent upon whether Unatin made default of the conditions precedent. That he failed to make monthly reports and settlements for lots sold, is shown in the record. The evidence shows that Unatin not only failed to account for the proceeds of the steam shovel, which he sold, but he concealed from the plaintiffs the fact that such sale had been made. The defendant brought into the record—though for another purpose—the judgment of the Ohio court, which we will advert to later, showing a recovery for over $3,300.00 for money of the plaintiffs received by him and unaccounted for according to the terms of his contract. So, his default is conclusively established. While a court of equity has no jurisdiction to enforce forfeiture, if the vendor in a land contract desires such relief, he must seek it at law or by reentry for breach of condition. *Spies* v. *Railroad Company*, 60 W. Va. 393; *Fitzhugh* v. *Maxwell*, 34 Mich. 138. Here the plaintiffs made entry for breach of the conditions—hence it was lawful. They are now in the possession of the property. The contracts made with the defendant are outstanding. Alleging that said contracts are harrassing them, and are thereby a cloud upon their title, plaintiffs seek in this suit to cancel and remove them. There is no head of equity jurisdiction better established than that which embraces the cancellation of instruments which are capable of a vexatious use after the means of defense at law may become impaired or lost or when they are calculated to throw a cloud upon the title or interest of the parties seeking relief. 6 Pom. Eq. Jur. (3rd Ed.) Sec. 731; 9 C. J. 1190; *New York & New Haven Railroad Co.* v. *Schuyler*, 17 N. Y. 592, 599; *Cawood* v. *Howard* (Ky.) 113 S. W. 109; *Development Co.* v. *Mitchell*, 138 Fed. 279; *Adams* v. *Railway Co.*, 64 W. Va. 181. This rule is settled too firmly to be shaken. The grounds on which the defendants resist its application here are twofold: that although default was made, equity will relieve from the so-called forfeiture; and, that notwithstanding plaintiffs took possession of the property, they sought in a suit in the state of Ohio to recover all the claims upon

which they based the right to re-enter this property and declare the contracts void. In the way of affirmative relief, as has been stated, they seek to have the forfeiture set aside, the plaintiffs ousted from the property and the same restored to the defendants—in fact, that the contracts be specifically enforced.

Numerous decisions are cited, by counsel for defendants, in support of the doctrine that rescission of a partially executed contract is not permitted for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract. As we view it, this doctrine has no application here. The whole spirit of the contracts in question here is to secure a faithful performance of the trust reposed by the plaintiffs in Unatin. There is no more firmly rooted principle of law than that these parties had a right to make whatever contract they pleased with reference to this property. Under the broad liberty of contract allowed by the law, parties may make performance of any comparatively, or apparently, trivial and unimportant covenant, agreement or duty under the contract a condition precedent, and, in such case the contract will be enforced or dealt with as made. *Adams* v. *Railway Co., supra; Railroad Co.* v. *Triadelphia,* 58 W. Va. 487. As these parties have done so, how can the court deny to one of them the benefit of the contract, or relieve the other from its obligation? Unatin defaulted before the time arrived when title to the property was to be made to him. His assignee, The New Town Builders' Company, had no title except that there would be passed to them for each purchaser a deed when the purchaser paid the purchase price in full. That failure to perform a condition precedent prevents the vesting of title or right is elementary law. *In re Brooklyn &c. Ry. Co.,* 72 N. Y. 245; *Oakland Railroad Co.* v. *Railroad Co.,* 45 Cal. 365; *Fort Worth Ry. Co.* v. *Rosedale Ry. Co.,* 68 Tex. 169; *Street Railway Co.* v. *Railway Co.,* 48 Mich. 433; *Ward* v. *Sea Ins. Co.,* 7 Paige (N. Y.) 294. "A condition precedent doth get and gain the thing or estate made upon condition, by the performance of it." Jacobs L. Dict.; 8 Cyc. 558.

The contract expressly provides, in the event of its breach by Unatin, that neither of the parties should hold any money except such as properly belonged to him or them. While they claim they have put some money into the property, any equitable ground derived therefrom, is cut from under their feet by Unatin's covenant releasing the responsibility of the plaintiffs for such voluntary expenditure by him or his assignee. However, the record is barren as to this contention. These parties stand just where they placed themselves by the express language of their contract. While equity generally will not enforce a forfeiture, yet where the parties themselves have enforced it by providing for re-entry for a breach and re-entry has been made, a court of equity is powerless to relieve. 1 Pom. Eq. Jur. (3rd Ed.) § 455. This is especially true where the party who seeks to set aside a forfeiture that he, by his wrongful conduct, has created.

The second ground of defense concerns the effect of the Ohio suit on the instant litigation. This action was taken in the common pleas court of Jefferson county, at Steubenville, the home of the defendant Unatin. The plaintiffs there set up the "land agreement", the defaults under said agreement of Unatin, by reason of which the plaintiffs had re-possessed the land, and the bond given to secure them against said default and the damages resulting therefrom. The defendant answered this complaint. The case coming to issue, by agreement of the parties a jury was waived and the case submitted to the court upon the pleadings and the evidence. The court found in favor of the plaintiffs in the sum of $3,354.31. This judgment was entered during the pendency of the instant suit. It was not appealed from. The defendants urge here that the plaintiffs having recovered the damages for the default, in the Ohio suit, have made their election, and they cannot now in this suit urge the same breaches and defaults as a ground for cancellation of the same contract. It must be remembered that the defendant was not authorized under these contracts to retain any money belonging to the plaintiffs. The courses pursued by the plaintiffs are not inconsistent. The money sued for was Watzmans' money—proceeds of sales of their property. They were merely demanding in the Ohio suit what was rightfully theirs.

The only ground of demurrer to the amended bill, urged by defendants, is that Taylor, trustee, and William Watzman, trustee, were necessary parties. Taylor, trustee, has executed his trust, according to the record, and so has William Watzman, trustee, so far as the defendants are interested. By deed dated the 3rd day of October, 1922, the latter, as trustee, transferred to the plaintiffs all of the lots unsold included originally in the contracts with the defendant Unatin. No decree entered herein will affect either of these parties.

The remaining assignment of error is met by the maxim of equity that he who seeks equity must do equity. The rule is strict and inflexible that a party has no right of action for damages for breach of the contract where he himself has breached the contract. *Johnson* v. *Hoffman,* 130 Va. 335. The re-entry of the plaintiffs under the express provision of the contract, being lawful, the loss, if any, occasioned thereby to the defendants is *damnum absque injuria.*

The decree of the circuit court cancelling and setting aside the contracts in question as a cloud upon the plaintiffs' title, and denying the relief prayed for by the defendants, is therefore affirmed.

*Affirmed.*