289 S.E.2d 706
**Louise Reese MARTHENS, et al.**

v.

**The B & O RAILROAD CO., etc.**

No. 15122.

Supreme Court of Appeals of
West Virginia.

March 26, 1982.

Rehearing Denied May 27, 1982.

John S. Sibray, Charleston, Charles A. Sinsel, Clarksburg, for appellants.

Davis, Davis, Hall & Clovis, William Crichton, V, and Fred L. Davis, Jr., Parkersburg, for appellee.

NEELY, Justice:

This appeal from a final order of the Circuit Court of Harrison County raises several questions concerning the interpretation of a reversionary clause contained in a deed conveying land to the appellee, Baltimore & Ohio Railroad Company. The deed in question conveyed land to the Railroad to be used solely and strictly for railroad purposes. The appellants sought to reenter the land in question on the grounds that leases executed by the Railroad with local businesses allowing them to store scrap and conduct a retail building supply business on the property caused the land to be used other than for "railroad purposes," triggering a reversion. The circuit court held that the land was still being used for railroad purposes within the contemplation of the deed.

In 1892, the appellants' predecessors in title, Nathan and Laura Goff, executed a deed conveying 19.08 acres of land bordering the Clarksburg city limits to the B & O

Railroad Company for consideration of $5 and the construction and maintenance of a bridge across its railroad tracks. This deed contained a reversionary clause in the following language: "(i)t is fully understood that said land is to revert to said Goff, at any time when said railroad company shall cease to use it solely and strictly for railroad purposes."

By deed dated 31 May 1906, Nathan and Laura Goff conveyed an additional acre of land to the Railroad and the Railroad conveyed approximately five acres of unneeded land from the earlier grant back to the Goffs. The Land transferred by the 1906 deed was conveyed "subject to the terms, conditions and restrictions contained in said deed," and this language referred to the 1892 deed.

During succeeding decades the Railroad used the land conveyed by the Goffs to construct a passenger station, freight depot and switching yard. Beginning in 1930 the Railroad gave various licenses to utility companies and rights-of-way to individuals across this property. The appellants do not complain of these grants.

In 1968, the Railroad leased 15,100 square feet of the land conveyed to it by the Goffs to Clarksburg Iron & Steel, Inc., for the purpose of storing scrap. Another 30,100 square feet of this land was subsequently added to this lease in 1977. In 1970, the Railroad leased 38,829 additional square feet of this property and the Railroad's freight house and adjoining platforms to Bauer Lumber and Home Center. Additional land was leased to the successors of Bauer Lumber and Home Center in 1975. All of the above leases, including those executed with the utility companies, contain provisions allowing the Railroad to terminate them upon 30 days notice.

On 1 June 1978 the appellants filed a suit to quiet title in Harrison County Circuit Court, alleging that the Railroad, by entering into the leases, had breached the conditions of the original grants and had used the property in a manner inconsistent with the grants. Appellants claimed that because of the Railroad's action in leasing the land to others for non-railroad purposes the land reverted to them. They prayed that the court hold that they held the land clear of the appellee's former interest.

In its answer the Railroad asserted that railroad purposes include any use that directly or indirectly contributes to the safe, economical and efficient use of the railroad and that their leases did not violate the terms of the original grants. Both parties filed motions for summary judgment. The circuit court accepted the Railroad's position and granted it summary judgment. The Court noted:

> [there] is no question that the defendant acquired a fee simple title to this real estate. The proviso in the deed contained a condition subsequent. The court feels that these parties were dealing with the entire tract conveyed and not with any small part. In the court's opinion, the condition in this estate does not destroy the defendant's estate so long as the defendant uses a greater portion of the land basically for railroad purposes.

In the case at hand, the Railroad was granted a conditional fee, vesting in it the right to possession and use of the right-of-way contingent upon the use of the property for railroad purposes. The question before us now is whether this property is being used for railroad purposes when portions of the grant have been leased to third parties for non-railroad purposes.

■ The specific factual situation presented by this case is one of first impression in this jurisdiction. However, a reading of cases from other jurisdictions leads to the conclusion that there are three broad criteria to which a court must look to determine whether land is no longer being used for railroad purposes: (1) has the property actually been alienated by sale or lease or effectively abandoned by long non-user; (2) if the property is leased or unused, would a reasonable person conclude that there is a substantial likelihood that the property will be used again for railroad purposes; and (3) if part of the property is no longer used for railroad purposes and has been abandoned under the two criteria above, and part is still used for railroad

purposes, is the unused property sufficiently distinct and identifiable that it can be separated in some reasonable way from property that is still being used for railroad purposes. We shall discuss each of these criteria in sequence.

## I.

### A

■ It is self-evident, with respect to the first guideline, that if land is conveyed away it can no longer be used for railroad purposes and a majority of jurisdictions have so held. *See, generally*, Annot., 95 A.L.R.2d 468, 498 (1964). An exception to this rule, however, is that if the railroad conveys the land to another who uses it for railroad purposes or any other original purpose, the reversionary clause does not become operative. *Garlick v. Pittsburgh & W. R. Co.*, 67 Ohio St. 223, 65 N.E. 896 (1902). On the other hand, the mere attempt to convey away land for a use other than that for which it was granted is conclusive evidence of intent to abandon it for railroad purposes. *Seventy-Ninth Street Improvement Corp. v. Ashley*, Mo., 509 S.W.2d 121 (1974); *Barton v. Jarvis*, 218 Ky. 239, 291 S.W. 38 (1927).

### B

■ The fact of nonuser, that is, failure of the grantee to use the land over a long period of time, may also indicate intent to abandon use of the right-of-way for railroad purposes. It is commonly held that nonuser alone, without further inquiry, is not dispositive of the abandonment issue. *Hennick v. Kansas City Southern Ry. Co.*, 364 Mo. 883, 269 S.W.2d 646 (1954); *O'Brien v. Best*, 68 Idaho 348, 194 P.2d 608 (1948). As a general rule, nonuser is but one factor tending to prove abandonment. However, additional circumstances, such as the removal of tracks and other structures, *U. S. v. 1.44 Acres of Land*, (D.C.Md.1969) 304 F.Supp. 1063; *Pratt v. Griese*, 196 Kan. 182, 409 P.2d 777 (1966); *Maryland & P. R. Co. v. Mercantile-Safe and T. Co.*, 224 Md. 34, 166 A.2d 247 (1960), or the acquisition and use of an alternative line, *Denver & R. G. R. Co. v.*

*Mills* (8th Cir. 1915) 222 F. 481; *Chambers v. Great Northern Power Co.*, 100 Minn. 214, 110 N.W. 1128 (1907), will certainly provide conclusive proof of abandonment.

### C.

■ Generally it has been held that a railroad company may permit third persons to use or lease a portion of its right-of-way for non-railroad purposes where such use is not inconsistent and does not interfere with the use of the the right-of-way for railroad purposes. *Missouri-Kansas Texas R. Co. v. Freer*, (Mo.App.1959) 321 S.W.2d 731; *Mitchell v. Illinois Cent. R. Co.*, 384 Ill. 258, 51 N.E.2d 271 (1943).

In *Mitchell, supra*, the railroad granted an easement over property owned in fee by the grantor. Sometime thereafter, the railroad entered into a lease with an oil company granting it a portion of the right-of-way to be used as a combination bulk oil and filling station. The lease was subject to termination upon sixty days notice. Plaintiff Mitchell contended that use of the premises for a retail outlet exceeded the easement rights of the railroad that limited its use to railroad purposes. The court held that during a railroad's occupancy under its grant to use the property for railroad purposes the company might make any use of the land that directly or indirectly contributed to the safe, economical, and efficient operation of the road and that did not interfere with the rights of adjacent property owners. The court also noted that the railroad had the right to do all things with its rights-of-way, within the scope of its charter powers, that might be essential or incidental to its full and complete use of the land to accomplish the purpose for which the easement was acquired.

■ The reason for this approach is found in the nature of the railroads' role in our economy. Railroads are generally incorporated and operated as private companies. The capital comes from private investors and the profits are likewise returned to the private sector. Despite this fact, however, railroads are not viewed strictly

as private corporations since they are publicly regulated common carriers. Essentially, a railroad is a highway dedicated to the public use. This dedication imparts to the railroad the status of a quasi-public corporation. *Eckington & Soldier's Home R. Co. v. McDevitt*, 191 U.S. 103, 24 S.Ct. 36, 48 L.Ed. 112 (1903); *United States v. Trans-Missouri Freight Assoc.*, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897). As such, the rights and duties of a railroad are in most instances determined by constant consultation with the public interest. This position is succinctly articulated in *Atlanta & W. P. R. Co. v. Camp*, 130 Ga. 1, 60 S.E. 177, 179 (1908) in which the court says:

> [When] one contracts with a railroad company in reference to those matters where the public is involved, the contract is made subject to the rights of the public and when the exigencies of the business of the company are such that the rights of the public come in conflict with the rights of the contracting party under his contract, it is to be presumed that it was the intention of the parties that the private rights under the contract should yield to the public rights.

## II.

As we have noted, the validity of allowing a railroad to execute short-term leases of its right-of-way to third parties is virtually unquestioned. Economic factors,

changes in operational methods, and the ebb and flow of business often make it impossible to use an entire tract of land for railroad purposes on a continuous basis. Yet, to hold that all land not in actual use must revert, even if unused or leased for only a short time, is unrealistic and in most instances would probably run contrary to the bargain that the original parties to the deed intended. Public policy dictates that railroads must be allowed some latitude in their use of land, including particularly the right to lease property on a short-term basis in order to contribute to their fixed costs during periods when railroad activities are cyclically depressed.

■ Problems are encountered, however, where a lease continues indefinitely. We recognize that the rule allowing railroads to lease their rights-of-way to third parties is not absolute.[1] Where a railroad executes such a lease, the length of the term may evidence an intent to abandon the right-of-way for railroad purposes. Clearly, a lease for many years that cannot be terminated will render a right-of-way unavailable for railroad purposes.

■ In close cases the matter may become a jury question and the test is whether a reasonable person would conclude that there is a substantial likelihood that the property will be used for railroad purposes in the foreseeable future.[2] The

1. We can foresee that, in many instances a railroad having an actual intent to abandon may attempt to protect itself by entering into short-term leases. The mere universality of precedent that short-term leases are *prima facie* not evidence of intent to abandon does not preclude inquiry into such situations where it is alleged that the short-term lease is a bare fiction and the railroad has no intent to use the property again for railroad purposes.

2. The Rules of Civil Procedure, adopted by this Court in 1960, give no guidance concerning the right to a jury trial in an action to quiet title. This is attributable, in part, to the fact that an "action to quiet title", now a universal procedure to determine disputed titles to land, involves two historically distinct causes of action: namely, the former equitable suit of a "bill to quiet title," and the common law action of "ejectment." Whether our Rules of Civil Procedure accord a jury trial in a land dispute today is determined by history and not by logic. M.

Lugar and L. Silverstein, *West Virginia Rules*, Rule 39(a) Comment (1960); *W.Va.R.C.P.*, 38(b). More specifically, the right to a jury trial in a civil action to quiet title depends upon whether the underlying dispute traditionally would have been tried as an action at law for ejectment or as a suit in equity to quiet title.

Ejectment is an action for the protection of one with good legal title to the land who is entitled to immediate possession. Specifically, the action of ejectment has been held to lie in cases where there is an adverse possessor who has not yet possessed the premises in question for the period of the statutory bar, *Adams v. Alkire*, 20 W.Va. 480 (1882); where a tenant in possession of the property has not complied with the terms of the lease, *Voss v. King*, 33 W.Va. 236, 10 S.E. 402 (1889); or where the location of a boundary line is in dispute, *Yonker v. Grimm*, 101 W.Va. 711, 133 S.E. 695 (1926). Historically, West Virginia has always accorded the right to a jury trial in an action for ejectment. *See, W.Va.Code*, 55–4–17 [1929]; *Davis*

factors that should be considered in making such a determination include the intentions of the railroad as evidenced by their long-range plans for the particular property, the economic conditions giving rise to the lease or non-use, and the length of the non-use or the terms of the lease.

■ Since railroads are charged with public responsibilities and since their continued vitality is an urgent public consideration (particularly in light of the economies of rail travel in terms of demands upon both the tax structure and the environment), the burden of proving abandonment rests on the one who asserts it, *Maryland & P. R. Co. v. Mercantile-Safe Deposit & T. Co., supra,* and in close cases where it is difficult to determine that a preponderance of the evidence exists on the question of abandonment for railroad purposes, doubt should be resolved in favor of the railroad.

### III

■ We can envisage that, frequently a railroad company will clearly alienate or fail to use only a piece of property held under a deed containing a reversionary clause. Most courts have determined that, where the termination or forfeiture of the estate conveyed for a specific use or purpose by the terms of the deed is predicated upon abandonment or cessation of such specified use or purpose, an additional or different use of part of the property will not effect a termination or forfeiture so long as the specified use is continued on

the rest of the tract. *Davis v. Skipper,* 125 Tex. 364, 83 S.W.2d 318 (1935); *Williams v. McKenzie,* 203 Ky. 376, 262 S.W. 598 (1924).

This position is cogently stated in *Lawson v. Georgia S & F Rail Co.,* 142 Ga. 14, 82 S.E. 233, 235 (1914) where it was held that:

(i)n order to effect a reverter of the whole estate, where part of the land is used for the purpose specified in the grant and part of the land is used for another purpose, there must be a total destruction of the whole estate of the grantee. Where land is conveyed to be used for a certain purpose, with a clause of forfeiture if it ceases to be used for the object specified, the whole estate does not cease if the land is used for other purposes, provided that it is also used for the purpose for which it was conveyed.

■ We prefer, however, a less one-sided approach to this problem. The better approach is to determine first whether any part of the grant has been abandoned according to the principles set forth above in Section I and then whether the tract that has been abandoned is of such a size and shape that it can equitably be separated from the main tract. If those two conditions coexist, then the abandoned tract can revert without requiring forfeiture of the entire estate. *Tamalpais Land & Water Co. v. Northwestern Pacific Rail Co.,* 73

Colliery Co. v. Westfall, 78 W.Va. 735, 90 S.E. 328 (1916); Garrett v. South Penn Oil Co., 66 W.Va. 587, 66 S.E. 741 (1909).

Where the title to land is in question, an equitable bill either to quiet title or to remove a cloud is the traditional remedy. Suits to quiet title are appropriate in cases where a deed is imperfect, Austin v. Brown, 37 W.Va. 634, 17 S.E. 207 (1893); has been forged, Andre v. Hoffman, 81 W.Va. 620, 95 S.E. 84 (1918), or in situations where the owner of real estate executes written instruments providing for the sale of his property, which are of record and which are in the hands of the defendant but which were rescinded by the reentry of the grantors after the grantee had defaulted in the performance of specified conditions. Watzman v. Unatin, 101 W.Va. 41, 131 S.E. 874 (1926). The authority of a court of equity to quiet title to land exists independently of any statute. Dolan

v. Hardman, 126 W.Va. 480, 29 S.E.2d 8 (1944). Traditionally, equity courts have resolved disputes that arise from written documents and present primarily questions of law, while ejectment has been used to resolve question of fact such as adverse possession. In some instances, however, the legal question as to the sufficiency of title is entwined with questions of fact. In such cases, under former practices the plaintiff's bill was either dismissed, Harman v. Lambert, 76 W.Va. 370, 85 S.E. 660 (1915), or tried before a jury as if it were an action at law. Alexander v. Davis, 42 W.Va. 465, 26 S.E. 291 (1896).

If a modern civil action to quiet title has elements of both its historical antecedents, then those issues heretofore triable as of right by a jury in ejectment should be so tried, and those issues heretofore decided in equity should today be tried to the judge alone.

Cal.App.2d 917, 167 P.2d 825 (1946). In *Tamalpais*, land was granted to a railroad company by deed providing that the lands so conveyed were to be used for the maintenance and operation of a railroad and for the construction and maintenance of a freight shed or other terminal facilities for railroad purposes and none other. In 1940, the railroad company discontinued passenger service over this line, leased the greater portion of its passenger station and adjacent ground to Pacific Greyhound Company, reserving only a small portion of the building for the use of a station agent, and removed its tracks from the immediate vicinity of the station. The court held that where the defendants, by their own acts, subdivided what otherwise was a grant of an entire area and tore out the tracks and used the terminal area for use not provided for in the deed, the deed was divisible in determining whether there had been a partial abandonment of the areas not used for railroad purposes. In reaching this decision, the court relied on several previous cases holding that a partial abandonment extinguishes so much of the right as had been abandoned, including *Atlantic Coastline Rail Co. v. Sweat*, 177 Ga. 698, 171 S.E. 123 (1923); *Mobile J & K Rail Co. v. Jamper*, 88 Miss. 817, 41 So. 513 (1906).

The reasons for limiting partial reversions to identifiable tracts of land that can reasonably be separated from the remainder are obvious. The reconveyance of amorphous, non-unified parcels of land without adequate ingress and egress would unreasonably interfere with the operation of the remainder of the estate by the railroad.

In the case before us summary judgment was granted without full inquiry into the circumstances of the railroad's nonuser. While the railroad entered into only short-term leases, that fact alone does not protect it from forfeiture unless it can demonstrate some reasonable likelihood that the premises will again be used for railroad purposes. Furthermore, it is apparent that part of the original tract is still being used for some railroad purposes. Therefore, if the court concludes that some portion of the land has been permanently abandoned for railroad purposes, it must then determine whether there are reasonable boundaries to such tract and whether severance is practical. Since abandonment is not an all or nothing proposition, more discreet inquiry into the issues addressed in this opinion must be undertaken than was possible on the motions for summary judgment.

Accordingly, the judgment of the Circuit Court of Harrison County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.