412 S.E.2d 253

**WHEELING STAMPING COMPANY, a Corporation, Defendant Below, Appellee,**

v.

**WARWOOD LAND COMPANY, a Corporation, and its Successors in Interest, and Sol N. Gross, Plaintiff Below, Appellant.**

No. 20082.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1991.

Decided Dec. 11, 1991.

John Preston Bailey, Byrum, Bailey & Riley, Wheeling, for appellee.

Robert A. Yahn, David J. Simms, Wheeling, for appellant Sol N. Gross.

WORKMAN, Justice:

This is an appeal by Sol N. Gross from a December 10, 1990, final order of the Circuit Court of Ohio County granting summary judgment to appellee Wheeling Stamping Company. The underlying civil action involved a dispute over ownership of railroad property no longer being used for railroad tracks. The circuit court determined that the railroad owned only a right-of-way for rail purposes and that such right-of-way reverted back to the abutting landowners upon abandonment by the railroad. Consequently, the lower court held that Wheeling Stamping was the owner of one-half of the railroad right-of-way abutting its land. Mr. Gross appeals the decision of the lower court and contends that he is entitled to the ownership of that disputed property. We disagree with the contentions of the appellant and hereby affirm the decision of the Circuit Court of Ohio County.

## I.

On May 2, 1872, landowners Joshua and Anna Cowpland allegedly executed an unrecorded "release" in favor of Pittsburgh, Wheeling and Kentucky Railroad of certain property owned by the Cowplands. Consolidated Rail Corporation (hereinafter "Conrail" or "the railroad") was the successor in title to the Pittsburgh, Wheeling and Kentucky Railroad and the predecessor in title to the appellant. The only reference to the "release" is contained in the records of Conrail. The actual document evidencing the conveyance, however, was not recorded and has not been located by the

parties. Conrail's records reflect only that a "release" was granted but do not reflect what interest the release actually granted.[1]

On June 25, 1984, Conrail filed a petition with the Interstate Commerce Commission to abandon rail service on the Wheeling secondary tract, a contiguous 19.8 mile section of the railroad property running along the Ohio River from Wellsburg, West Virginia, south through Wheeling to Benwood, West Virginia. An order granting the railroad's petition was entered on October 1, 1984, and the tract was placed on the market for sale. On October 5, 1985, the appellant executed a contract with the railroad to purchase the tract, and the purchase was closed on January 8, 1986.

The appellant then conveyed various tracts to the City of Wheeling and to the West Virginia Department of Highways. The disputed parcel is a portion of the section conveyed by the appellant and constitutes the easterly one-half of the right-of-way formerly used for the railroad tracks of Conrail. All railroad tracks have been removed from the right-of-way.

On January 25, 1989, the appellee filed a complaint seeking to quiet title and to determine ownership of the one-half of the railroad right-of-way formerly used by Conrail in the Warwood section of Wheeling, Ohio County, West Virginia. The appellant asserted ownership of a parcel of land now at issue in this appeal. The property in question is an approximately sixty foot right-of-way consisting of 432 feet from the northerly line of North Sixth Street extending west and north.

Both the appellant and the appellee filed motions for summary judgment with the court. By order dated December 10, 1990, the circuit court granted the appellee's mo-tion for summary judgment and denied the appellant's motion for summary judgment. The lower court ruled that the railroad possessed a right-of-way for rail purposes only and that the appellant could therefore acquire only that interest. However, the lower court also ruled that the railroad had abandoned its right-of-way and that upon abandonment, the abutting landowners became vested with title to the one-half portion adjoining their lands. It is from those rulings that the appellant now appeals.

## II.

In the absence of a written document evidencing the alleged conveyance, it is impossible to reach a definite conclusion regarding whether the railroad held only an easement or an estate in fee. Thus, without a recorded document protecting the interests of the railroad, we may only conclude that the railroad acquired a right of way easement by prescription.[2] Although it appears that this Court has never had the opportunity to address the precise issue of a prescriptive easement for railroad tracks, the weight of authority impels us to hold that a railroad acquires only a prescriptive easement, rather than the estate in fee, by its long use of the land. "The principal reason advanced in support of the rule is that the nature of the user by the railroad requires no more than an easement in the right of way and does not, therefore, amount to an occupancy adverse to the claim of another to the fee." *Maryland & Pennsylvania R. R. Co. v. Mercantile–Safe Deposit & Trust Co.*, 224 Md. 34, 37, 166 A.2d 247, 249 (1960). As we noted in syllabus point 3 of *Hanshew v. Zickafoose*, 173 W.Va. 151, 313 S.E.2d 427 (1984), " '[t]he character and purpose of an ease-

---

1. The land over which the "release" was granted was conveyed by the Cowplands to John Lash in 1884, to Jacob Lasch in 1886, to R.J. and Rachel McCullough in 1909, and then to the Warwood Land Company in 1909. In 1917, the Warwood Land Company conveyed to the railroad all property between the railroad right-of-way and the Ohio River. The Warwood Land Company was dissolved on May 10, 1954, for nonpayment of taxes.

2. The elements necessary to establish a prescriptive easement were set forth in syllabus point 2, in pertinent part, of *Keller v. Hartman,* 175 W.Va. 418, 333 S.E.2d 89 (1985), as follows:

> 'The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof....' Syl. pt. 1, *Holland v. Flanagan,* 139 W.Va. 884, 81 S.E.2d 908 (1954).

ment acquired by prescription are determined by the use made of it during the prescriptive period.' Syl. pt. 3, *Burns v. Goff,* [164] W.Va. [301], 262 S.E.2d 772 (1980)." Thus, the use of the land defines the parameters of the easement such that use of the property for railroad purposes creates an easement limited to railroad purposes.

### III.

Having determined that the railroad held the property in question by prescriptive easement, we must next address the issue of abandonment of that easement. We had the opportunity to deal with the issue of abandonment of railroad property, albeit in a slightly different context, in *Marthens v. B & O R.R. Co.,* 170 W.Va. 33, 289 S.E.2d 706 (1982). In *Marthens,* we examined the criteria to be examined in determining whether land is no longer being used for railroad purposes. We dealt with specific language in the deed in *Marthens* indicating that the right-of-way had been granted to the railroad with a reversionary clause providing for reverter when the property ceased to be used for railroad purposes. 170 W.Va. at 36, 289 S.E.2d at 709. In the effort to determine whether the railroad's specific actions in *Marthens* constituted such cessation of use, we set forth some general guidelines for analysis of the abandonment issue which are applicable to the present case. *Id.* 170 W.Va. at 37, 289 S.E.2d at 710. In so doing, we stated simply that "[i]t is self-evident, ... that if land is conveyed away it can no longer be used for railroad purposes...." *Id.* (citing Annotation, *What Constitutes Abandonment of a Railroad Right of Way,* 95 A.L.R.2d 468, 498 (1964)). Furthermore, we explained that "the mere attempt to convey away land for a use other than that for which it was granted is conclusive evidence of intent to abandon it for railroad purposes." *Marthens,* 170 W.Va. at 37, 289 S.E.2d at 710.

The appellant in the present case attempts to distinguish abandonment of tracks from abandonment of the easement itself. Under our holding above, however, such distinction is of little consequence. Where a railroad acquires property by prescriptive easement, the easement is only as broad as the use itself, and the cessation of the use through which the easement was created is tantamount to extinguishment of the easement. Consequently, when the railroad in the present case petitioned the Interstate Commerce Commission to abandon rail service on the tract in question, such action operated as evidence of abandonment of the easement. Moreover, the railroad's attempt to convey whatever interest it had in the property to the appellant constituted concrete evidence of the intent to cease use for railroad purposes.

In such situation, upon abandonment by the railroad, the weight of authority indicates that the property is to be reinstated as a part of the freehold over which the easement had previously run, and the land is to be owned in fee simple by the owners of the land abutting the easement. *See,* i.e. *Fleck v. Universal–Cyclops Steel Corp.,* 397 Pa. 648, 156 A.2d 832 (1959). Under such a scenario, the railroad would not have the authority to convey the property to a third-party for non-railroad purposes.

We noted in *Marthens* that "[e]ssentially, a railroad is a highway dedicated to the public use." 170 W.Va. at 38, 289 S.E.2d at 711. Even through that analysis, the abutting landowners would be entitled to the property based upon the principle, as recognized by the Supreme Court of Missouri in *Koviak v. Union Elec. Co.,* 442 S.W.2d 934, 937 (Mo.1969) (quoting *Brown v. Weare,* 348 Mo. 135, 143, 152 S.W.2d 649, 654 (1941)), that "[w]here an easement only is received by a railroad company, the same rule should apply to the 'lands used for railroad purposes and later abandoned as applies to public highways.'" That rule, in Missouri as well as West Virginia, is that the property reverts to the abutting landowners. We referenced that general principle in *Belhassan v. Town of Iaeger,* 112 W.Va. 598, 166 S.E. 10 (1932), and stated that "where a town or city abandons a street or alley, the same ordinarily reverts to the abutting property owners." The *Koviak* court explained the public policy rationale underlying the rule that once abandoned, title to a railroad right-of-way is presumed to be in the abutting land-

owners, each owning to the center of the line on the side abutting his land. 442 S.W.2d at 937. The court explained that the rule "is based upon sound public policy considerations. It assures éase of ascertaining ownership and prevents the vesting of title upon abandonment of a right of way in the heirs of long since deceased grantors or predecessors in title." *Id.*

The Supreme Court of Kansas has extended the rule such that it is "immaterial whether the railway company acquired ... [the property] by virtue of an easement, by condemnation, right-of-way deed, or other conveyance." *Harvest Queen Mill & Elevator Co. v. Sanders,* 189 Kan. 536, 542, 370 P.2d 419, 423 (1962). "If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral part of the freehold to which it belonged prior to its subjection to use for railway purposes." *Id; see also Gauger v. State,* 249 Kan. 86, 815 P.2d 501 (1991); *Pratt v. Griese,* 196 Kan. 182, 409 P.2d 777 (1966); *Abercrombie v. Simmons,* 71 Kan. 538, 81 P. 208 (1905).

■ Similarly, we hold that where property acquired by prescriptive easement for railroad purposes is abandoned by the railroad, the property returns to its prior status as an integral part of the freehold to which it previously belonged and there is a rebuttable presumption that it is owned in fee simple by the owners of the abutting land, one-half of the railway easement to each landowner on his respective side of the easement.[3] Accordingly, the railroad could not convey the strip of property in question to the appellant. The lower court's conclusion was not in error, and it is hereby affirmed.

Affirmed.

---

**3.** In the present case, there was no evidence indicating any intent of the original grantor or subsequent grantors as to the reversion of the land upon cessation of use. For purposes of future evaluations, however, it must be recognized that evidence of intent of the original grantor or subsequent grantors to limit or define the usage of the easement is relevant and admissible on the issue of appropriate disposal of the land subsequent to the extinguishment of the easement. Only a presumption of ownership by the abutting landowners is created. Such presumption may be rebutted by evidence of contrary intent.