622 So.2d 1120 (1993)
Polly S. LOVELAND, Appellant,
v.
CSX TRANSPORTATION, INC., etc., et al., Appellees.
No. 92-1764.
District Court of Appeal of Florida, Third District.
August 10, 1993.
Rehearing Denied September 14, 1993.
*1121 Haley, Sinagra & Perez and Timothy M. Crutchfield, Miami, for appellant.
Goldstein & Tanen and Susan E. Trench, Mershon, Sawyer, Johnston, Dunwody & Cole and Martha de Zayas and Paul M. Platte, Miami, for appellees.
Before FERGUSON, JORGENSON and GODERICH, JJ.
JORGENSON, Judge.
Polly S. Loveland appeals from an adverse summary judgment in an action to enforce a reversionary interest in real property. For the following reasons, we reverse.
In 1926, the Redland Sales Co. transferred real property to Seaboard All-Florida Railway, predecessor in interest to CSX Transportation. The warranty deed provided that the property would be used for railroad purposes and would revert back to the grantor if it was subsequently abandoned and no longer used for railroad purposes.[1]
Seaboard and its successors built a railway and a passenger station on the property. In 1984, CSX sold a portion of the donated property to Dan Williams and Sons, Inc. (Williams). In 1985 CSX sold another portion of the property to George Sprinkle, d/b/a Sprinkle Farms (Sprinkle). Additionally, in 1987 CSX sold a portion of the land to C & S Sandblasting and Painting, Inc. Charles H. Stalanaker and his wife are the successors in interest to C & S.
On November 19, 1990, Polly Loveland, the successor in interest to Redland Sales Co., instituted an action for declaratory relief seeking a reverter, quiet title and ejectment against CSX, Williams, Sprinkle, and Stalanaker. Loveland filed a motion for summary judgment as to the three parcels of land that were sold. Each of the Defendants filed a motion for summary judgment as to the entire action. George Sprinkle submitted an affidavit with his motion stating that the land he purchased in 1985 had been leased to his family and used as a packing plant since the 1940's. The only reference in the record to the other leases occurred at the hearing on the motion when Williams's counsel stated that Williams had leased part of the property since 1963.
The trial court granted the appellees' motion for summary judgment and denied Loveland's motion for summary judgment. The trial court found that Loveland was not entitled to reverter because the railroad had not been abandoned. Additionally, the trial court stated that even if Loveland was entitled to a reverter, the statute of limitations and laches barred her action against the appellees. We reverse the summary judgment because we find that the reversion clause was triggered by the sale of the parcels of land and because a question of fact remains as to the terms of the leases which allegedly bar Loveland's cause of action due to the statute of limitations and laches.
The fundamental rule in construing conditions subsequent in a deed is that the intention of the parties control. White v. Metropolitan Dade County, 563 So.2d 117, 123 (Fla. 3d DCA 1990). Although deed restrictions are construed most strongly against the grantor, the restrictions must be construed in accordance with the intent of the parties. See Richardson v. Holman, 160 Fla. 65, 33 So.2d 641 (1948); Ocean Beach Realty Co. v. City of Miami Beach, 106 Fla. 392, 143 So. 301 (1932). If there is only one construction which will give full effect to all the words of the instrument, it should be followed. Ocean Beach Realty, 106 Fla. at 395, 143 So. at 302. The language of the deed provides that the property should revert if the railroad is abandoned and the property no longer used for railroad purposes. CSX *1122 contends that this court should construe such language strictly and interpret the clause to mean that as long as a railroad is operated on the property the reverter clause will not be triggered. Under CSX's construction, CSX could conceivably sell a substantial portion of the property and retain a small portion to operate the railroad to avoid the reverter clause. Clearly, this was not the intent of Redland Sales when it deeded the property. The two criteria in the reverter clause indicate that the intent of Redland Sales was for the grantee to use the property for the operation of a railroad. We interpret the reverter clause to mean that the property would revert if the land was not used for railroad purposes.
It is undisputed that CSX operates a railroad on the property. The question before this court is whether selling portions of the property triggered the reverter clause so that the three parcels or the whole property should revert. Two questions must be answered to determine whether the reversion clause was triggered. Marthens v. B & O Railroad, 170 W. Va. 33, 289 S.E.2d 706, 713 (1982). The first question is whether any part of the property was abandoned or no longer used for railroad purposes because "the property [has] actually been alienated by sale or lease." Id. 289 S.E.2d at 710. If property is sold, it can no longer be used for railroad purposes unless it is conveyed to someone who will use the land for railroad purposes. Id. See, e.g., Cannco Contractors Inc. v. Livingston, 282 Ark. 438, 669 S.W.2d 457 (railroad deeding of right-of-way constituted abandonment), modified, 282 Ark. 438, 670 S.W.2d 454 (1984); Lawson v. State, 107 Wash.2d 444, 730 P.2d 1308 (1986) (sale of railroad right-of-way to county for use as hiking trail was not used for railroad purpose, and it constituted abandonment); Seventy-Ninth Street Improv. Corp. v. Ashley, 509 S.W.2d 121, 123 (Mo. 1974) ("An offer to sell [right-of-way for use other than that for which is granted] is totally inconsistent with any position other than that the use of the strip for railroad purposes has been abandoned.").
"A `railroad purpose' is one which is primarily for the benefit of the public, and not a private individual." Cannco, 669 S.W.2d at 460; see also Miller v. Empire Rice Mills, 228 Ark. 1161, 312 S.W.2d 925 (1958) (using property for a mill does not constitute a railroad purpose); City of Sturgeon v. Wabash Railroad, 223 Mo. App. 633, 17 S.W.2d 616 (1929) (use of property for storage and sale of coal does not constitute a railroad purpose). In Cannco, where a railroad sold the right-of-way to a private individual who would maintain the tracks and use them for his shipping business, the Supreme Court of Arkansas held that the railroad abandoned the right-of-way when it deeded the property because even though the tracks were still being used, they were not being used for a railroad purpose. Cannco, 669 S.W.2d at 459. The court concluded that the intent of the grantor was not for the grantee to sell the property to a private individual to conduct a private enterprise. Id. at 460.
If the parcels of land that were conveyed are deemed to be abandoned or no longer used for railroad purposes, the second question is whether the conveyed portions can revert without requiring a forfeiture of the whole property. Marthens, 289 S.E.2d at 713. Courts have allowed a partial reversion where parts of the property have been abandoned but the rest of the property is used for a railroad purpose. See Tamalpais Land & Water Co. v. Northwestern Pacific Railroad, 73 Cal. App.2d 917, 167 P.2d 825 (1946). In Tamalpais land was conveyed to a railroad to be used for the maintenance and operation of a railroad. The railroad discontinued passenger service but continued to use it for freight services. The railroad leased a substantial portion of the passenger station and adjacent grounds. The railroad tore up a portion of the tracks so that the passenger station was completely cut off from any rail connection. The court held that a partial violation of a deed restriction can lead to a partial reversion. Tamalpais, 167 P.2d at 831; Cf. Thomas v. City of Santa Fe, 112 N.M. 456, 816 P.2d 525 (App.) (partial reversion occurs only where *1123 language in the deed provides for it), cert. denied, 112 N.M. 308, 815 P.2d 161 (1991).
Similarly, in Marthens the court was faced with the issue of whether property was being used for railroad purposes when portions of the property were leased for non-railroad purposes. The court acknowledged that a partial reversion may occur if the abandoned portions are of "such size and shape that ... [they] can equitably be separated from the main tract." Marthens, 289 S.E.2d at 713. The court in reversing the summary judgment rejected the trial court's findings that as long as a greater portion of the property was used for railroad purposes, the estate would not be destroyed even if parts of the property were leased. 289 S.E.2d at 710.
We agree with the holding in Marthens and conclude that once the parcels of property were sold the reversion clause was triggered but only as to those portions of property that were sold. The alleged leases may have triggered the reverter clause at an earlier date and thus barred Loveland's cause of action under the statute of limitations and laches. See Marthens, 289 S.E.2d at 712 (recognizing that although railroads may enter into leases, the terms of the leases may indicate an intent to abandon the property). The record, however, contains no evidence of the alleged leases with the exception of an affidavit filed by Sprinkle stating that his family leased the property since the 1940s. Questions of fact remain as to the terms, conditions, and intent of the alleged leases. Summary judgment was therefore premature.
Reversed.
NOTES
[1] The warranty deed contained the following provision:

Said property is to be used for freight and passenger station and other purposes incident to the operation of the S.A.F.Ry., but is to revert to grantor, or its assigns, if said railroad does not extend its present line from Miami to Homestead, or should said railroad be subsequently abandoned and said property no longer used for railroad purposes.