# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Mimi's Inc., and Harold R. Arbaugh,**
**Defendants and Third-Party Plaintiffs Below, Petitioners**

**vs.)  No. 18-0775** (Kanawha County 14-C-513)

**BAI Riverwalk, L.P.; Zamias Services, Inc.;**
**Kimco Riverwalk Corporation; Kimco**
**Riverwalk 595, Inc.; and Kimco Riverwalk, L.P.,**
**Plaintiffs and Third-Party Defendants Below, Respondents**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Mimi's Inc., ("Mimi's") and Harold R. Arbaugh, by counsel Ancil G. Ramey, appeal multiple orders of the Circuit Court of Kanawha County, referenced specifically below, including orders awarding summary judgment to respondents on petitioners' counterclaims against Respondent BAI Riverwalk, L.P. ("BAI") and petitioners' third-party claims against Respondent Zamias Services, Inc., ("Zamias") and Respondents Kimco Realty Corporation; Kimco Riverwalk 595, Inc.; and Kimco Riverwalk, L.P. (collectively referred to as "Kimco"). Petitioners further appeal the circuit court's award of a judgment to Respondent BAI for unpaid rent and associated damages, including attorney's fees. Respondent Kimco, by counsel Joseph T. Cramer, filed a response in support of the circuit court's order awarding summary judgment to Kimco. Respondents BAI and Zamias, by counsel Mychal S. Schulz, filed a response in support of the circuit court's orders. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying litigation arises from petitioners' lease of a 2,620 square foot commercial space at Riverwalk Plaza Shopping Center ("Riverwalk") in South Charleston, West Virginia. On January 18, 2011, Respondent Kimco and Petitioner Mimi's executed a lease agreement for the premises at issue for a period of five years, with a base monthly rent of $4,148.33.[1] In addition to the commercial lease agreement, Petitioner Arbaugh, president of Mimi's, executed a "Guaranty" in which he personally "guarantee[d] all of the payments to be made by [Mimi's] under the

---

[1] The term of the lease commenced on March 17, 2011.

1

[l]ease." In April of 2011, petitioners opened a restaurant and video gaming establishment in the leased space.

On March 30, 2012, Respondent Kimco sold its interest in Riverwalk to Respondent BAI, and, that same day, assigned its interest in all Riverwalk leases, including petitioners' lease, to BAI. On January 8, 2014, petitioners ceased operation of their restaurant and video gaming establishment in the leased space. In March of 2014, BAI filed the underlying litigation against petitioners alleging breach of contract, breach of the covenant of good faith and fair dealing, and "collection on guaranty" executed by Petitioner Arbaugh. BAI sought unpaid rent totaling $10,242.42 and rent for the balance of the lease totaling $141,769.98.[2]

On April 30, 2014, petitioners served their answer and a counterclaim against BAI alleging BAI's breach of contract, breach of lease, breach of quiet enjoyment, fraud in inducement, conversion, theft, trespassing, negligence, breach of the covenant of good faith and fair dealing, and gross negligence, reckless, willful, and wanton conduct. Specifically, petitioners alleged that BAI

> (1) tore down and illegally removed a substantial part of the leased premises, causing [petitioners] substantial economic and business harm; (2) failed to repair and replace the HVAC unit as verbally represented in the lease negotiations and as thereafter represented in the lease; (3) failed to remove mold on the premises; (4) failed to properly repair multiple roof leaks, as well as leaks in the rear window of the premises; (5) improperly tore down the [petitioners'] fencing on its premises; (6) failed to properly lease back the adjoining leased structure as represented; (7) failed to properly credit [petitioners'] initial lease deposit; (8) allowed water leaks to cause damage to the rented premises as well as video lottery machines utilized by [petitioners] on the leased premises; (9) improperly destroyed and removed [petitioners'] deck and seating area; and (10) improperly and illegally billed [petitioners] for services, repairs[,] and clean up that was not the responsibility of [petitioners].

Petitioners then sought leave to file a third-party complaint against Respondents Kimco and Zamias[3] setting forth factual allegations similar to those alleged against BAI, but also including claims for civil conspiracy and tortious interference with a contractual and business relationship. Petitioners were granted leave to file their third-party complaint on May 29, 2015.[4]

---

[2] On August 6, 2014, four months after petitioners' breach of the lease, BAI entered into a written lease with Ivy's LLC for the property at issue. Ivy's lease became effective on November 8, 2014, at a charge of $3,471.83 per month, and continued through April 30, 2016.

[3] Zamias Services was the property manager hired by BAI for the Riverwalk properties.

[4] Petitioners also sought leave to include third-party claims against Bon Aviv Investments, LLC ("Bon Aviv"), a company affiliated with BAI. Petitioners were granted leave to pursue third-

On October 19, 2016, Kimco filed a motion for summary judgment, to which petitioners responded. Kimco's motion for summary judgment was granted by the circuit court on December 19, 2016. On May 4, 2017, BAI and Zamias filed a joint motion for summary judgment, to which petitioners replied. A hearing was held on the motion on June 1, 2017. By order entered June 21, 2017, the circuit court granted BAI and Zamias' motion for summary judgment for reasons similar to the reasoning employed by the court when granting summary judgment to Respondent Kimco. Further, with no other claims pending against Zamias, the court dismissed it from the case, with prejudice.

On August 7, 2017, a bench trial commenced on BAI's claims against petitioners.[5] The only witness called to testify by BAI was a representative of Zamias who offered testimony as to the lease, Zamias' work for BAI, petitioners' abandonment of the property, and calculation of BAI's damages. In the presentation of their case, petitioners called Tommy Clay, operator of a company that leased video poker machines to petitioners, as a witness. Mr. Clay testified that, on at least two occasions, one of his video poker machines at the leased premises sustained water damage, that he visited the location once or twice a week, and that the water problems at the premises were "constant." Mr. Clay testified that he contacted petitioners' property management regarding these issues but was advised there was nothing to be done to correct the problem. Next, petitioners called Petitioner Arbaugh to testify. Petitioner Arbaugh testified that he spent over $90,000 remodeling the leased space but the leaking roof and mold problems persisted and negatively impacted his business. Petitioners' final trial witness was Ron McVey, who installed electronic security and other equipment at the leased premises. Mr. McVey testified about prolific water infiltration that caused electronic equipment to be damaged and that he did not believe the space was "fit to be occupied."

On October 2, 2017, the circuit court entered a preliminary judgment order in favor of BAI. In the preliminary judgment order, the court found total damages claimed by BAI for lost rent and other payments due under the lease was $91,285.80.[6] The circuit court was critical of petitioners' failure to present any "photographs or other evidence that depicted or reflected the alleged water damage or mold" and found no justification or excuse to substantiate petitioners' non-compliance with the lease agreement. In addition to an award of damages to BAI, the circuit court's judgment included an award of attorney's fees to BAI counsel "in an amount to be determined based upon a

---

party claims against Bon Aviv. Petitioners' claims against Bon Aviv were subsequently dismissed and are not at issue in the instant appeal.

[5] In paragraph 15, subsection (G) of the parties' lease agreement, it is noted that the parties "mutually agree that they hereby waive trial by jury in any action proceeding or counterclaim brought by either against the other as to any matters arising out of or in any way connected with the" lease.

[6] The court found that for lost rents and other amounts due under the lease agreement, those amounts totaled (1) $56,773.85 for the period of time the premises was leased solely to petitioners; (2) $33,348.18 for the period in which Ivy's occupied "a portion of the space and paid rent"; (3) $6,058.80 in costs incurred by BAI for a leasing commission related to the Ivy's lease; (4) and application of petitioners' security deposit of $4,895.03 against the claimed damages.

provision" contained in the lease agreement. The lease agreement, at paragraph twenty-two, contains a provision titled "failure of performance by tenant" which provides: "[t]enant shall pay all reasonable attorneys' fees, costs and expenses incurred by Landlord in enforcing the provisions of this Lease, suing to collect Rent . . . whether the lawsuit or other action was commenced by Landlord or by Tenant."

Petitioners argue that BAI did not request attorney's fees under this provision of the lease agreement and did not address the same in its summary judgment motion or at the bench trial. Further, petitioners argue that BAI never "filed a petition or motion for" attorney's fees. However, despite these objections and as directed by the court, on October 11, 2017, BAI submitted documentation related to its attorney's fees. On October 16, 2017, petitioners filed a formal objection to the proposed attorney's fees and argued that the same made no reference to the factors outlined in *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986). Petitioners requested an evidentiary hearing.

On November 30, 2017, BAI responded to petitioners' objections, to which petitioners submitted a reply. A hearing was held before the circuit court on December 6, 2017. Ultimately, the court determined that BAI was entitled to reimbursement of its attorney's fees. Specifically, the court ruled that it did not find that a formal "petition" for BAI's attorney's fees and expenses was necessary, as the request for attorney's fees herein arose from a contractual obligation (the lease agreement of the parties). The court further noted that inasmuch as BAI had submitted its claim for attorney's fees, including invoices other documents to support its claims, that the same represented a "petition" for those fees, costs, and expenses. The court found that BAI's claims for attorney's fees satisfied the applicable *Pitrolo* factors, and the same were reasonable and necessary to enforce the terms of the lease.

Over the objections of petitioners, on December 25, 2017, the circuit court entered a proposed final judgment order awarding BAI attorney's fees and litigation expenses in the amount of $129,351.10. Thereafter, petitioners filed a motion for a new trial and motion to alter or amend judgment under Rule 59(e) of the West Virginia Rules of Civil Procedure. Petitioners' motions were denied by order dated July 31, 2018. It is from the July 31, 2018, order denying petitioners' post-trial motions; the October 2, 2017, preliminary judgment order; the December 25, 2017, final judgment order; the June 21, 2017, order granting BAI and Zamias summary judgment; and the December 19, 2016, order granting Kimco summary judgment that petitioners now appeal.

In their petition for appeal, petitioners advance seven assignments of error. In their first three assignments of error, petitioners argue that the circuit court erred in granting summary judgment to Respondents Kimco, Zamias, and BAI. Petitioners argue, in their fourth assignment of error, that the circuit court erred by excluding certain evidence at trial. In their fifth assignment of error, petitioners take issue with the findings of fact and conclusions of law made by the circuit court in support of the preliminary judgment order. Petitioners contend, in their sixth assignment of error, that the circuit court erred in awarding attorney's fees and litigation expenses to BAI. Finally, in its seventh assignment of error, petitioners argue that the circuit court erred in denying petitioners' post-trial motions. We will address each of petitioners' assignments of error in turn.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v.*

4

*Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). This Court has long held that

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at syl. pt. 4. Further, this Court has noted that "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 60, 459 S.E.2d 329, 337 (1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512. (1986)).

Petitioners challenge, in their first three assignments of error, the court's award of summary judgment to Respondents Kimco, Zamias, and BAI as to petitioners' third-party and counterclaims. Petitioners' third-party and counterclaims are substantially similar in nature and each relate to petitioners' lease of the subject premises from respondents, which is governed by the lease agreement executed between the parties.[7] The lease agreement specifically provided, at paragraph 15 subsection (G), that:

> Landlord and Tenant mutually agree that they hereby waive trial by jury in any action, proceeding or counterclaim brought by either against the other as to any matters arising out of or in any way connected with this Lease, or their relationship as Landlord and Tenant, or Tenant's use or occupancy. ***Tenant agrees that no counterclaim or setoff will be interposed in any action by Landlord based on non-payment of Rent, even if such counterclaim or set off is based on Landlord's alleged breach of a duty to repair or alleged breach of quiet enjoyment, or any other allegation***. [Emphasis Added].

With regard to contracts, this Court has found that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962). "Where the parties to a contract have specified therein the conditions upon which an action upon the contract may be maintained, such conditions precedent generally must be complied with before an action for breach of contract may be properly brought." Syl. Pt. 1, *Vaughan Constr. Co. v. Va. Ry. Co.*, 82 W. Va. 658, 97 S.E. 278 (1918). This Court has further reasoned that

> [t]here is no more firmly rooted principle of law than that these parties had a right to make whatever contract they pleased with reference to this property. Under the broad liberty of contract allowed by law, parties may make performance of any comparatively, or apparently, trivial and unimportant covenant, agreement,

---

[7]As referenced hereinabove, the lease was executed between Kimco and petitioners, and subsequently assigned to Respondent BAI. Respondent Zamias was the property manager for Respondent BAI.

or duty under the contract a condition precedent, and in such case, the contract will be enforced or dealt with as made.

*Watzman v. Harry L. Unatin*, 101 W. Va. 41, 51, 131 S.E. 874, 878 (1926). Here, BAI brought an action against petitioners seeking recovery of monies due under the lease agreement, to which petitioners filed a counterclaim and third-party claims in an attempt to explain its alleged breach of the lease. However, pursuant to the express terms of paragraph 15, subsection (G) of the lease agreement, the circuit court concluded, and we now concur, that petitioners' counterclaims and third-party claims were improper as petitioners were "barred from asserting any counterclaim or setoff in an action brought by" BAI for collection of past due rent. We further find that, based upon the unique facts and circumstances of this case, the prohibition extended to prevent petitioner from asserting similar claims against Respondent Kimco (BAI's predecessor in interest)[8] and Respondent Zamias (who had no ownership interest in the property and simply served as the agent of BAI).

The circuit court additionally found that petitioners failed to establish a prima facie fraud claim against Kimco, BAI, or Zamias. *See Tri-State Asphalt Products, Inc. v. McDonough Co.*, 182 W. Va. 757, 391 S.E.2d 907 (1990). Petitioners allege that they were improperly induced to enter into the lease agreement as a result of an oral promise made during lease negotiations. Specifically, petitioners contend that a Kimco representative "orally represented that if [petitioners] entered in to the lease agreement the monthly rent payments and size of the demised premises would be 45% less than the parties' written contract."

In awarding summary judgment to respondents as to petitioners' fraud claims, the circuit court again cited to a provision of the parties' executed lease agreement, (paragraph 24, subsection (A)), that provided that "[n]o oral statements or representations or written matter not contained in this lease shall have any force or effect." The circuit court determined, and we agree, that this provision was "sufficient to negate the essential fraud element of reliance[,]" thus defeating petitioners' claims against Kimco, BAI, and Zamias for fraud in the inducement. Further, we note that the lease agreement identified "in express terms both the amount of monthly rent and the size of the leased premises." With such an express designation, petitioners' arguments regarding contradictory oral statements are disingenuous.

The circuit court further determined that petitioners failed to identify any evidence to establish a claim against respondents for theft, conversion, or trespass, and found no liability against respondents in tort, as petitioners "have not identified any evidence to establish the existence of a legal duty owed outside of the parties' contractual duties and have not identified any evidence to establish the essential element of breach." The circuit court recognized that petitioners presented "no evidence to establish that any request was ever made to" respondents related to "any

---

[8] In paragraph 23 subsection (A) of the parties' lease agreement, it is noted that in "the event of a transfer by Landlord of its interests in this Lease, the transferor shall be automatically released from all liability and obligations as Landlord." Thus, as Kimco sold its interest to BAI on March 30, 2012, and assigned its interest in the lease agreement at issue to BAI at the same time, Kimco was released from all liability and obligations of the landlord.

problems with the leased premises in the scope of the [l]ease [a]greement." Rather, the premises was leased in an "as is" condition.

The provisions of the lease agreement itself negate petitioners' claims for breach of contract associated with the condition of the property, as petitioners, in paragraph seven of the lease agreement, acknowledged that they had examined/inspected the property at issue and accepted the same "as is" and recognized that the

> [l]andlord is not obligated with respect to either the leased premises or the shopping center to make any improvements, changes, installations, do any work, make any alterations, repairs or replacement, clean out the leased premises, obtain any permits, licenses or governmental approval, or spend any money either to put tenant in possession or to permit tenant to open for business, unless landlord has so agreed expressly in this lease.

Upon taking possession of the premises, petitioners executed a "tenant delivery form" in which they acknowledged that they had inspected the premises and would, within five days, submit a written list to the landlord of any items requiring completion. Here, there is no evidence that petitioners ever submitted a list to respondents identifying any deficiencies within the leased premises after inspection. Further, if petitioners, as tenants, requested any repairs, the requests were to be made in writing pursuant to Paragraph 10(B) of the lease agreement. Again, petitioners did not provide respondents with any written notice requesting repairs to any portion of the leased premises to any of the respondents. Given such evidence, we find that the circuit court did not err in awarding summary judgment to respondents.

In their fourth assignment of error, petitioners contend that the circuit court erred in excluding evidence that, when purchasing the Riverwalk shopping plaza from Kimco, BAI received a $140,000 purchase credit. Petitioners contend that any judgment rendered against it must be reduced by this purchase credit, as the same directly related to petitioners' leasehold and petitioners' non-payment of rent.

Prior to trial, BAI filed a motion in limine to exclude evidence of this purchase credit at trial. BAI argued that this credit did not compensate BAI for any damages sought in this action. Petitioners responded to BAI's motion in limine and argued that the purchase credit was "singularly the most important evidence in the case." On January 10, 2017, the circuit court granted BAI's motion in limine finding that the credit was not relevant to whether petitioners breached the terms of the lease agreement at issue. The court reasoned that whether BAI was incentivized to purchase Riverwalk bears no relationship to whether petitioners failed to pay monies owed under the lease agreement.

Petitioners now contend that the parties should have had the "opportunity for a jury to decide what weight to give to the competing arguments of the parties" regarding the purchase credit, and in holding otherwise, the circuit court was clearly wrong. We disagree.

We review a trial court's ruling on a motion in limine under an abuse of discretion standard. *See* Syl. Pt. 1, *McKenzie v. Carroll Int'l Corp.*, 216 W. Va. 686, 610 S.E.2d 341 (2004). Here, the

7

circuit court correctly reasoned "[w]hen taken in context with the totality of the purchase and sale agreement . . . the "credit" was not intended to, nor did it under the plain terms of the lease agreement . . . modify or relieve [petitioners] of any payment obligations owed under the lease." As to petitioners' arguments that evidence relating to the credit was proper for a jury to hear ignores the fact that the parties herein "mutually agreed to waive a jury trial." Accordingly, we find that the circuit court did not abuse its discretion in excluding such evidence from consideration at trial.

In its fifth assignment of error, petitioners argue that the circuit court erred in finding that BAI was entitled to $91,285.80 in damages associated with the breach of the lease agreement. Specifically, petitioners are critical of the circuit court's failure to include, in the preliminary judgment order, five findings of fact and three conclusions of law that were proposed by petitioners–each of which relate to the testimonial evidence petitioners presented during trial.

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syll. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont,* 198 W. Va. 329, 480 S.E.2d 538 (1996).

Rule 52(a) of the West Virginia Rules of Civil Procedure provides, in relevant part, that, in all actions tried upon the facts without a jury, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Petitioners argue that the court erred in rejecting the "substantial evidence tendered in support of their claims" and entered a preliminary judgment order that did not include petitioner's proposed findings of fact and conclusions of law. Conversely, respondents argue, and we agree, that the circuit court did not make any erroneous findings of fact or conclusions of law. Here, the circuit court as the finder of fact observed each witness and made judgments regarding their credibility and veracity. The court's determination of the obviously self-serving evidence proffers made by the petitioners at trial were well documented and addressed specifically in the preliminary judgment order at paragraphs 12, 13, 14, 15, and 16. Critically, the court noted that petitioners failed to provide any demonstrative evidence such as photographs to substantiate their claims, which the court expected from "experienced and sophisticated businessmen" such as the petitioners' witnesses. The court further expressly noted, in paragraph 16, that: (1) Petitioner Arbaugh and petitioners' proffered witnesses, Tommy Clay and Ronald McVey, have known each other for a number of years; (2) Mr. Clay's wife is the bookkeeper for Petitioner Mimi's; (3) Petitioner Arbaugh's office is in the same space as Mr. Clay's office; and (4) Mr. McVey has installed security cameras and systems for businesses owned by Mr. Clay and businesses owned by Petitioner Arbaugh. Accordingly, as the circuit court's findings and conclusions were specifically based upon its determination of the credibility of witnesses, we find no error.

Next, petitioners argue that the circuit court erred in awarding attorney's fees to BAI. Regarding attorney's fees, this Court has stated that

"[t]he decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *Beto v. Stewart*, 213 W.Va. 355, 359, 582 S.E.2d 802, 806 (2003). *See also Sanson v. Brandywine Homes, Inc.*, 215 W.Va. 307, 310, 599 S.E.2d 730, 733 (2004) ("We . . . apply the abuse of discretion standard of review to an award of attorney's fees."); Syl. pt. 2, *Daily Gazette Co., Inc., v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999)(" ' " '[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)].' Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993).").

*Corp. of Harpers Ferry v. Taylor*, 227 W. Va. 501, 504, 711 S.E.2d 571, 574 (2011). We have further reasoned that "[a]n award of attorney's fees is appropriate where the governing document contains a provision allowing for the recovery of such fees. *Moore v. Johnson Serv. Co.*, 158 W.Va. 808, 219 S.E.2d 315, 323 (1975) (holding that the prevailing party should be granted attorney's fees as provided for in a commercial lease agreement)." *Tuckwiller v. Tuckwiller*, No. 19-0345, 2020 WL 598336, *2 (W. Va. Feb. 7, 2020)(memorandum decision).

Despite the fact that the recovery of attorney's fees was expressly provided for in the lease agreement executed by the parties, petitioners now argue that the circuit court abused its discretion in awarding attorney's fees to BAI as BAI made no specific request for attorney's fees in the underlying litigation. However, the circuit court determined that no specific petition or request for attorney's fees and expenses was necessary, as the request for attorney's fees herein arose from a contractual obligation. The court further noted that, inasmuch as BAI had submitted its claim for attorney's fees, including invoices and other documents to support its claims, that the same represented a "petition" for those fees, costs, and expenses. Based upon our review of the record, including the express provisions of the parties' lease agreement, we find that the circuit court did not abuse its discretion in awarding attorney's fees to Respondent BAI.[9]

Lastly, petitioners contend that the circuit court erred in denying petitioner's post-trial

---

[9] We note that within their assignment of error as to the propriety of the award of attorney's fees, costs, and expenses to Respondent BAI, petitioners are critical of the circuit court's alleged failure to analyze the award of attorney's fees under the factors outlined in *Pitrolo*. We find no merit in petitioners' argument. Here, within its December 15, 2017, Final Judgment Order, the circuit court discussed the *Pitrolo* factors and expressly concluded that BAI's claims for attorney's fees, costs, and expenses "satisfies the applicable *Pitrolo* factors," and that the same were reasonable and necessary to enforce the terms of the lease.

motions. "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). This Court has indicated that, as a general proposition, it will review a circuit court ruling on a motion for a new trial under an abuse of discretion standard. *In re State Pub. Bldg. Asbestos Litig.,* 193 W. Va. 119, 454 S.E.2d 413 (1994). The Court has also held that, in reviewing such rulings, the Court will not disturb the lower court ruling unless the lower tribunal's conclusions are plainly wrong or against the weight of the evidence. *State v. Crouch,* 191 W. Va. 272, 445 S.E.2d 213 (1994).

Here, petitioners argue that the court's final judgment order should be set aside. However, petitioners fail to identify any reasons, aside from the reasons articulated hereinabove, in support of their argument. As we find no error with the circuit court's rulings hereinabove and no merit to petitioners' associated allegations of error, we find no error in the circuit court's denial of petitioner's Rule 59(e) motion.

For the foregoing reasons, we affirm the circuit court's July 31, 2018, order denying petitioners' post-trial motions; October 2, 2017, preliminary judgment order; December 25, 2017, final judgment order; June 21, 2017, order granting BAI and Zamias summary judgment; and the December 19, 2016, order granting Kimco summary judgment.

Affirmed.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison